[739 NYS2d 421]

Bradley Wagman, Respondent, v Ledford A. Bradshaw et al., Appellants.

Second Department, March 18, 2002

### APPEARANCES OF COUNSEL

*Robert P. Tusa,* Lake Success (*Sweetbaum & Sweetbaum [Marshall D. Sweetbaum]* of counsel), for appellants.

### OPINION OF THE COURT

LUCIANO, J.

The question before the Court is whether a chiropractor who treated the plaintiff was properly permitted to testify as to the contents of an inadmissible written report interpreting magnetic resonance imaging (hereinafter MRI) films, which was prepared by another healthcare professional who did not testify, when the MRI films were not in evidence, and without proof that, as out-of-court material, the written MRI report was reliable.

The Court of Appeals has held that an expert witness may testify that he or she relied upon specific, inadmissible out-of-court material to formulate an opinion, provided (1) it is of a kind accepted in the profession as reliable as a basis in forming a professional opinion, and (2) there is evidence presented establishing the reliability of the out-of-court material referred to by the witness (*see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723).

Some decisions of this Court, however, have extended this rule. In revisiting these decisions we do not seek to thwart the expansion of rules, but merely seek to avoid rules from being errantly developed or needlessly extended. Therefore, we reiterate that, while the expert witness's testimony of reliance upon out-of-court material to form an opinion may be received

in evidence, provided there is proof of reliability, testimony as to the express contents of the out-of-court material is inadmissible.

In this action, the plaintiff suffered injuries to his neck and back in 1993 when the car he was driving collided with an automobile owned and operated by the defendants. The defendants conceded that they were 100% at fault in the happening of the accident. Therefore, the sole issue to be determined at trial was damages.

During the plaintiff's case-in-chief, the plaintiff testified that he had previously injured his back in 1991, and that in connection with the treatment of that injury, MRI films were taken. At that time he was treated by Dr. Sidney Zelin, a chiropractor, who also treated him for the injuries suffered in the 1993 accident. Dr. Zelin testified that he examined the plaintiff within two days after the 1993 accident, and he treated the plaintiff from October 1993 through November 1994. As a result of the initial examination in 1993, he formed a diagnosis that the plaintiff had injuries to his neck and lower back, and sent the plaintiff for MRI scans of his back. Although Dr. Zelin did not see and interpret the resulting MRI films, he reviewed a written report prepared by another healthcare professional, which contained an interpretation of the MRI films.

During the trial, the plaintiff's counsel, on direct examination of Dr. Zelin, asked: "Can you share with us the results of the MRI?" The defendant's counsel immediately objected to the question. After the Supreme Court elicited that Dr. Zelin had relied upon the written MRI report to form his diagnosis, the objection of the defendant was overruled. Dr. Zelin was then permitted to testify as to the "results of the MRI," as set forth in the report, which was not in evidence, that there were "small central herniations at L4-L5 and L5-S1." The expert further testified that the 1993 accident was a competent producing cause of the plaintiff's injuries. The plaintiff was thus allowed to place in evidence, by way of the treating chiropractor, a subjective interpretation of MRI films, from an inadmissible report written by a nontestifying healthcare professional. This was prejudicial error, requiring this Court to reverse the judgment in the plaintiff's favor and grant a new trial.

It is well settled that, to be admissible, opinion evidence must be based on one of the following: first, personal knowledge of the facts upon which the opinion rests; second, where the expert does not have personal knowledge of the facts upon which the opinion rests, the opinion may be based upon facts

and material in evidence, real or testimonial; third, material not in evidence provided that the out-of-court material is derived from a witness subject to full cross-examination; and fourth, material not in evidence provided the out-of-court material is of the kind accepted in the profession as a basis in forming an opinion and the out-of-court material is accompanied by evidence establishing its reliability.

It is this fourth basis for positing an opinion, commonly known as the "professional reliability" basis, which is implicated in this matter, and which has resulted in confusion with respect to the use of secondary evidence in this department (see, Hambsch v New York City Tr. Auth., supra at 726; see also, Romano v Stanley, 90 NY2d 444, 452; Serra v City of New York, 215 AD2d 643; Flamio v State of New York, 132 AD2d 594). Reemphasis of the rule stated by the Court of Appeals is required to eliminate any confusion in its application.

Expert opinion, based on unreliable secondary evidence, is nothing more than conjecture if the only factual foundation, as in this case, is another healthcare provider's interpretation of what an unproduced MRI film purports to exhibit. Admission into evidence of a written report prepared by a nontestifying healthcare provider would violate the rule against hearsay and the best evidence rule. Inasmuch as such a written report is inadmissible, logic dictates that testimony as to its contents is also barred from admission into evidence.

Plainly, it is reversible error to permit an expert witness to offer testimony interpreting diagnostic films such as X-rays, CAT scans, PET scans, or MRIs, without the production and receipt in evidence of the original films thereof or properly authenticated counterparts (see, Hambsch v New York City Tr. Auth., supra at 725; Marion v Coon Constr. Co., 216 NY 178, 182; Kosiorek v Bethlehem Steel Corp., 145 AD2d 935; see, Chang Chiu v Garcia, 75 AD2d 594). Without receipt in evidence of the original films, a party against whom expert opinion testimony is offered is deprived of the opportunity to cross-examine the expert witness concerning the basis for the opinion, offer opposing evidence to clear misimpressions, or offer a contrary opinion controverting the interpretation of the films, through his or her own expert witness.

The New York State Legislature has acknowledged the problems inherent in laying foundations for the introduction in evidence of medical material. CPLR 4532-a was thus enacted to provide a remedial and convenient method for the introduction in evidence of X-rays, MRIs, CAT scans, PET scans,

electromyograms, sonograms, or fetal heart rate monitor strips, without foundational testimony. The proponent thereof, however, is required to literally comply with the requirements of CPLR 4532-a (*see, Galuska v Arbaiza,* 106 AD2d 543, 545 [judgment reversed because X-rays which were not photographically inscribed with the patient's name were improperly admitted into evidence]). Once the actual film is received in evidence, any qualified expert may opine an interpretation as to what it shows, since the opinion testimony is now based upon facts which are in evidence before the court (*see, Marion v Coon Constr. Co., supra*).

Since CPLR 4532-a applies only to the actual film, scan, or strip resulting from one of the specified medical tests, a written report prepared by a nontestifying healthcare professional interpreting MRI films, such as the MRI report herein, is not admissible into evidence (*see, Schwartz v Gerson,* 246 AD2d 589 [report prepared by doctor who examined the plaintiff for his insurance carrier but did not testify at trial should not have been admitted into evidence and read to jury]). Such a written report is patently inadmissible hearsay as the declarant, the preparer of the report, is unavailable for cross-examination (*see generally, People v Sugden,* 35 NY2d 453, 460).

Additionally, the receipt in evidence of the contents of a nontestifying healthcare professional's written report, interpreting a film produced as the result of a medical test, violates the best evidence rule (*see, Schozer v William Penn Life Ins. Co. of N.Y.,* 84 NY2d 639). The best evidence rule is intended to eliminate or reduce the spectre of deceit or perjury, potential inaccuracies attendant to human recall, or errors in crafting or recording a writing. The rule clearly bars a healthcare provider's written report which interprets the results of a medical test from receipt in evidence.

In *Schozer v William Penn Life Ins. Co. of N.Y. (supra* at 644), the Court of Appeals noted that the best evidence rule has been applied to "an unproduced X ray and the derivative evidence offered in its place to describe its contents." The Court further opined that, generally, the original X-ray film must be produced before testimony can be adduced as to its diagnostic significance. Secondary evidence of such a diagnostic interpretive report will be permitted only if the proponent thereof (1) sufficiently explains the X-ray films' unavailability and (2) establishes that the secondary evidence accurately and reliably portrays the original. This principle applies with equal force to MRI films and diagnostic reports interpreting them.

In this case, the MRI report was not, and could not have been, properly admitted into evidence, since the proponent thereof advanced no claim that the original MRI films were lost or destroyed, and consequently, unavailable. The plaintiff's treating chiropractor, notwithstanding these circumstances, was permitted, over objection, to testify as to the ultimate conclusion set forth in the report, prepared by a nontestifying healthcare provider, under the guise of the "professional reliability" basis for admission of an expert's opinion into evidence. The plaintiff's expert's testimony concerning the interpretation of the MRI films, as stated in the report of the nontestifying preparer thereof, was not limited to testimony that his opinion was based, in part, upon the out-of-court material, but rather was impermissibly offered for the truth of the contents of the written MRI report. As such, and with no opportunity for the defendant to cross-examine the healthcare professional who prepared the report, or offer his own evidence or expert testimony to rebut it or controvert the interpretation and significance of the MRI films, the potential existed for a jury to give undue probative weight to out-of-court material.

In addition to our holding that the "professional reliability" exception does not permit an expert witness to offer opinion testimony based upon out-of-court material, for the truth of the matter asserted in the out-of-court material, we also take this opportunity to reiterate the requirement that, "[i]n order to qualify for the 'professional reliability' exception, there must be evidence establishing the reliability of the out-of-court material" (*Hambsch v New York City Tr. Auth., supra* at 726). Indeed, "[r]eliability of the material is the touchstone; once reliability is established, the medical expert may testify about it even though it would otherwise be considered inadmissible hearsay" (*Borden v Brady*, 92 AD2d 983, 984 [Yesawich, J., concurring]).

In the case at bar, there was no proof presented to establish that the written MRI report contained reliable data. It is significant that the plaintiff's treating chiropractor never saw the actual MRI films. There was simply no evidence regarding the healthcare professional who prepared the MRI report, or when and under what circumstances it was prepared. Additionally, there was no evidence that the written MRI report offered a detailed interpretation of the several images displayed in the MRI films, or whether the report merely stated a conclusion as to the condition or conditions purportedly revealed by the films. Furthermore, the treating chiropractor's testimony was equivocal as to whether he used the written MRI report merely to

confirm an already established diagnosis or whether he relied upon it to form his diagnosis (*compare, Serra v City of New York, supra*). Accordingly, this particular written MRI report was not shown to be sufficiently reliable to permit the witness to rely upon it as out-of-court material "of a kind accepted in the profession as reliable in forming a professional opinion" (*People v Sugden, supra* at 460; *Hambsch v New York City Tr. Auth., supra* at 726; *Magras v Colasuonno*, 278 AD2d 388; *Erosa v Rinaldi*, 270 AD2d 384).

■ To the extent that prior cases from this Court (*see, e.g., Torregrossa v Weinstein*, 278 AD2d 487; *Pegg v Shahin*, 237 AD2d 271) have not limited application of the "professional reliability" basis for opinion evidence to permit an expert witness to testify that he or she relied upon out-of-court material which is of a type ordinarily relied upon by experts in the field to formulate an opinion, and have not required proof that the out-of-court material was reliable, those cases should be not be followed.

In *Torregrossa (supra* at 488), "the court admitted into evidence the [MRI] report of John Torregrossa even though the doctor who prepared the report did not testify." The Court recognized that the written MRI report was improperly admitted into evidence, but held that the error was harmless. It further held that the "treating physician was properly allowed to testify with respect to the [written] MRI report because he had personally examined him, and the [written] MRI report is data of the kind ordinarily accepted by experts in the field." (*Id.*) The inherent inconsistency of that holding is obvious. If admission into evidence of the report, in violation of the best evidence rule and the rule against hearsay, is erroneous, then permitting an expert to testify as to the substantive contents of the inadmissible report is likewise erroneous. Thus, application of the harmless error doctrine in *Torregrossa* was incorrect.

In *Pegg (supra* at 272, 273), this Court held that the trial court "did not err in permitting the treating physician of the plaintiff * * * to testify concerning the results of certain X-rays and a [MRI] test," based upon written reports interpreting the results because the written reports were data of a type ordinarily accepted by experts in the field, and "[t]he references to the X-rays and the MRI test, for the most part, served to confirm the conclusions drawn by the respective experts following their independent examination of these plaintiffs." To the extent that *Pegg (supra)* applied the "professional reliability" exception to allow testimony as to the results of the

written reports, for the truth of the matters asserted in the written reports, without requiring the proponent of the evidence to establish the reliability of the written reports, it should no longer be followed.

Rules of evidence are the palladium of the judicial process. To suffer intrusions into time-tested concepts limiting the use of secondary evidence destroys the vitality of that judicial process. The danger and unfairness of permitting an expert to testify as to the contents of inadmissible out-of-court material is that the testimony is immune to contradiction. It offends fair play to disregard evidentiary rules guaranteed by the force of common sense derived from human experience. Venerable rules of evidence should not be casually discarded to accommodate convenience and speed in the gathering and presentation of facts or evidence.

In the instant case, the trial court committed reversible error in permitting the plaintiff's expert, who presented the only medical testimony offered on the plaintiff's case-in-chief, to testify as to the interpretation of MRI films, as set forth in a written report of a nontestifying healthcare professional, for the truth of the matters asserted in the report. It was, moreover, reversible error to permit the plaintiff's expert to state his opinion that there were herniations, which opinion was at least partially based upon the written MRI report, without first establishing the reliability of the written MRI report (*see, Magras v Colasuonno, supra*).

Under the circumstances, a new trial is warranted on the issue of damages. In light of our determination, we do not reach the defendants' remaining contentions. Therefore, we reverse the judgment, on the law, and a new trial is granted, with costs.

FLORIO, J.P., GOLDSTEIN and H. MILLER, JJ., concur.

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.