Matter of Lisa W. v Seine W. (2005 NY Slip Op 51782(U))

[*1]

Matter of Lisa W. v Seine W.

2005 NY Slip Op 51782(U) [9 Misc 3d 1125(A)]

Decided on August 25, 2005

Family Court, Kings County

Olshansky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 25, 2005

Family Court, Kings County
In the Matter of Lisa W., Petitioner,
against
Seine W., Respondent.
05459-61/03

Emily M. Olshansky, J.
In this child custody proceeding, respondent father has moved for an order precluding petitioner mother and the Law Guardian from introducing into evidence at trial a report prepared by a neutral forensic psychologist. That motion is opposed by petitioner mother and the Law Guardian and for the reasons set forth below, it is denied as premature with leave to renew at the close of petitioner mother's direct case and the case of the Law Guardian. In addition, respondent father has moved to quash a subpoena served by petitioner mother seeking the records and reports of a second psychologist retained by respondent father. That motion is opposed by petitioner mother and for the reasons set forth below, it is granted.
1. PROCEDURAL HISTORY
The parties were married on August 1, 1996 and separated in 2003. Two children were born of the marriage, Tyler on May 5, 1999 and Joshua on August 16, 2000. In addition, on November 11, 1998, respondent adopted Jaylen, born to petitioner and her former husband on June 22, 1993.
[*2]
This proceeding was commenced on June 6, 2003, in Kings County Family Court when petitioner filed an application seeking custody of the three children. On June 30, 2003, petitioner was granted temporary custody and a temporary order of protection against respondent. Thereafter, a final order of protection was entered on consent, directing respondent not to interfere with petitioner's care and custody of the children or remove them from the jurisdiction. In addition, it directed that he stay away from the children with the exception of court-ordered visitation. On December 4, 2003, respondent was granted supervised visitation, which has continued to date.
On February 19, 2004, respondent filed a cross petition for custody of the three children. On March 4, 2004, the court ordered and the parties agreed to undergo a forensic evaluation. The report of the evaluator, Mary Carlin, Ph.D., was completed and distributed to counsel on August 10, 2004. Thereafter, respondent moved pursuant to County Law § 722-c for court authorization to retain Larry Cohen, Ph.D., to act as a consultant, conduct a peer review of Dr. Carlin's report and possibly testify. That application was granted. Thereafter respondent informed the court, the attorneys and the parties that he would not call Dr. Cohen to testify at trial.
On October 7, 2004, the matter was transferred to this Court and on December 13, 2004, a hearing on the parties' custody petitions commenced. Dr. Carlin was called as petitioner's first witness and, without objection, qualified as an expert in psychology and child psychology.
2. THE INSTANT APPLICATION
A. Motion to Preclude Expert Report
At the conclusion of Dr. Carlin's direct testimony, petitioner sought to introduce Dr. Carlin's report into evidence, without objection from the Law Guardian. Respondent moved to preclude based on the hearsay nature of the information obtained by Dr. Carlin as the result of interviewing collateral sources including family members, social workers and school personnel, as well as reviewing letters, records and other documentation. In addition, respondent asserted that absent the consent of both parties, Dr. Carlin's recommendations regarding custody and visitation, the ultimate issues in this case, as well as the report itself, were inadmissible.
Petitioner and the Law Guardian opposed respondent's motion to preclude, asserting that it was premature since they had not yet had the opportunity to call the collateral sources as witnesses or introduce certified copies of school and other records. They further asserted that Dr. Carlin's reliance on collateral source material did not render her report inadmissible since she could establish a non-hearsay basis for her conclusions and that the consent of the parties to the admission of the report was not required. Finally, they contended that Dr. Carlin's recommendations with respect to custody and visitation were one factor for this Court to consider in reaching its determination.
Petitioner also asserted that the report was admissible under the "professional reliability" exception to the hearsay rule. Petitioner contended that since experts in the field rely on [*3]conversations with third parties and out of court hearsay documentation and consider such material professionally reliable, the requirements for the exception had been established. Petitioner pointed to common practice and to the guidelines promulgated by the American Psychological Association as further evidence of professional reliability, noting that the guidelines encourage psychologists to use multiple methods of data gathering and go beyond party interviews.[FN1]
B. Motion to Quash 
On June 3, 2005, petitioner served Dr. Larry Cohen with a subpoena duces tecum seeking disclosure of "records and/or reports ... completed regarding Dr. Carlin's forensic reports." On June 24, 2005, respondent moved to quash the subpoena and for a protective order restraining Dr. Cohen from complying. Respondent asserted that Dr. Cohen's records and reports were
 prepared in anticipation of litigation and constitute attorney work product immune from disclosure. On June 17, 2005, petitioner filed and served an affirmation in opposition, asserting that Dr. Cohen, having been appointed by the court for purposes of conducting a peer review, is not respondent's expert. Accordingly, petitioner asserted that she is entitled to review Dr. Cohen's notes to be apprised of any finding made by him as to Dr. Carlin's report, "so long as respondent continues to raise objections to the admission into evidence of Dr. Carlin's report." Finally, petitioner contended that respondent's counsel, who does not represent Dr. Cohen, lacks standing to move to quash her nonparty subpoena. The Law Guardian submitted no papers in support of or opposition to the motion.
3. ADMISSIBILITY OF THE REPORT
A. Opinion Evidence Based Principally upon Non-Hearsay, Personal Knowledge, Evidentiary Material or Witnesses Subject to Cross Examination
It is well settled that opinion evidence is admissible only if the basis for the opinion meets certain criteria. In People v Stone (35 NY2d 69 [1974]), the Court of Appeals held that where an expert can establish that they were able to form an opinion based upon legally competent evidence the fact that they independently pursued other sources to achieve greater certainty will not defeat admission. This is particularly true where the expert's reliance upon extrajudicial material is slight, and where the third-party source serves only to confirm an opinion reached as a result of the expert's review of otherwise permissible evidence. The test is whether hearsay forms the principal basis of an opinion on a crucial issue and not merely a link in the chain of [*4]data upon which the expert relied (Id. at 74-77).[FN2]
Thereafter, in Wagman v Bradshaw (292 AD2d 84 [2d Dept 2001]), the Appellate Division Second Department set forth additional criteria for the admissibility of opinion evidence:
[T]o be admissible, opinion evidence must be based on one of the following: first, personal knowledge of the facts upon which the opinion rests; second, where the expert does not have personal knowledge of the facts upon which the opinion rests, the opinion may be based upon facts and material in evidence, real or testimonial; third, material not in evidence provided that the out-of-court material is derived from a witness subject to full cross-examination; and fourth, material not in evidence provided the out-of-court material is of the kind accepted in the profession as a basis in forming an opinion and the out-of-court material is accompanied by evidence establishing its reliability (Id. at 86-87).
In the aftermath of Wagman v Bradshaw (292 AD2d 84, supra ), the Appellate Division Second Department has consistently found error where trial courts have permitted opinion testimony from experts who lack personal knowledge, or base their conclusions upon material not in evidence or information from third parties not subject to cross examination (see e.g. Jemmott v Lazofsky, 5 AD3d 558, 560 [2d Dept 2004] [trial court erred in permitting plaintiff's expert to give opinion testimony regarding plaintiff's injuries since he did not have personal knowledge of plaintiff's condition and his opinion was based on MRI film not in evidence prepared by health care professional who did not testify])[FN3]
The question of whether or not the rule enunciated in Wagman v Bradshaw (292 AD2d 84), applies outside of the realm of medical malpractice cases generally and to Family Court cases in particular was answered in the affirmative in D'Esposito v Kepler (14 AD3d 509 [2d Dept 2005]). In that case, the Appellate Division Second Department held that the Family Court had erroneously admitted an expert's report and testimony into evidence at trial. The Court, citing Jemmott v Lazofsky (5 AD3d 558, supra ) and Wagman v Bradshaw (292 AD2d 84, supra ), held that the "Family Court improvidently exercised its discretion in admitting into evidence the report of the neutral forensic psychologist, since the report was not submitted under oath [*5](citation omitted) and relied on information other than that upon which an expert may properly base an opinion" (D'Esposito v Kepler, 14 AD3d at 510).[FN4]
Turning to the facts of the instant case, this Court finds that respondent's motion to preclude Dr. Carlin's report is premature. Petitioner and the Law Guardian assert that the portions of the report that refer to discussions with collateral sources and hearsay documentation is admissible because those sources did not form the principal basis for Dr. Carlin's conclusions but rather served only to confirm her opinion, which was based upon legally competent evidence. At trial, if the proponents of admission are able to establish the various degrees of reliance that Dr. Carlin placed on collateral source information, and that she based her opinions principally upon legally competent evidence, the fact that she independently pursued other sources will not defeat admission under the exception established in People v Stone (35 NY2d at 76).
In addition, petitioner and the Law Guardian contend that references in Dr. Carlin's report to interviews with the maternal grandmother, the maternal great-grandmother, a maternal cousin, a therapist, teachers, other school personnel and other third parties are admissible because they intend to call each of them to testify at trial. If these witnesses do in fact testify, then respondent will have the opportunity to conduct cross-examination and those portions of the report may be admissible under the third exception established in Wagman (292 AD2d at 86-87).
Further, petitioner and the Law Guardian assert those references in the report to school and other records are admissible because those records will be introduced at trial as business records. If those records qualify for admission under the business record exception, then those portions of the report may be admissible under the second exception established in Wagman (292 AD2d at 86).

B. Opinion Evidence Based upon Professionally Reliable Hearsay Petitioner's assertion that the report is admissible under the professional reliability exception whether or not the collateral sources testify or the collateral documentation is admitted into evidence is without merit. To qualify as a valid exception under the professional reliability exception, the hearsay must be "of a kind accepted in the profession as reliable in forming a professional opinion" and "there must be independent evidence establishing the reliability of the out-of-court material" (Hambsch v NYC Transit Authority, 63 NY2d 723 [1984]; Wagman v [*6]Bradshaw,[FN5] 292 AD2d 84 [2d Dept 2001]).
Although the "Guidelines for Child Custody Evaluations in Divorce Proceedings" promulgated by the American Psychological Association (American Psychologist, July 1994) do indeed recommend that psychologists interview collateral sources, the guidelines also establish that such sources should not provide the sole basis for the psychologist's recommendation. In fact, the guidelines provide that "if information is gathered from third parties that is significant and may be used as a basis for the psychologist's conclusions, psychologists must corroborate it by at least one other source whenever possible and appropriate and document this in the report."
 Moreover, the guidelines pertaining to psychological practice notwithstanding, the fact that experts generally rely on a particular methodology or source of information is not sufficient to ensure admissibility at trial. While psychologists may gather and incorporate information from collateral sources into their opinions, hearsay information received from third party sources, without more, does not satisfy the requirements for professional reliability. Expert reports should not function as a conduit for inadmissible hearsay. Out-of-court materials are hearsay even when repeated in court by an expert.
Contrary to petitioner's assertions, Dr. Carlin's availability for cross-examination does not cure the hearsay problem. Information provided by collateral sources, especially where, as here, many of those sources are family members, is susceptible to mistaken observation, errors in judgment, bias and misunderstanding, all antithetical to scientific reliability. If the information provided by collateral sources is defective, then the report and the opinions it contains will be defective as well. Proof of reliability or cross-examination of the collateral sources is the only cure.
Finally, petitioner's assertion that the collateral source material is not being offered for the truth and that it is therefore not hearsay is rejected. In this case, if the collateral source information is not being offered for the truth, then there is simply no reason to offer it. Petitioner's contention that it is only being offered to show the information on which Dr. Carlin relied in forming her opinions begs the question, since the only collateral hearsay information upon which Dr. Carlin's opinions should have been based is the collateral information outlined by the courts in Wagman and Stone.
In this case, neither petitioner nor Dr. Carlin has offered any independent evidence of reliability as to the information provided through interviews with the maternal grandmother, the maternal great-grandmother, the therapist, teachers or other third parties. If such evidence is presented at trial, then those portions of the report may be admissible under the fourth exception established in Wagman.
C. Consent to Report's Admission 
The appointment of forensic experts is a well-established aspect of custody litigation, sanctioned by case law as well as the Rules of Court (see, 22 NYCRR §§ 202.16 [g]; 202.18). [*7]The reports of such experts are admissible without consent, subject to each party's right to review the reports, receive a full and fair opportunity to expose inadequacies on cross-examination, and present material in rebuttal (Chisaidos v Chisaidos, 170 AD2d 428 [2d Dept 1991] [trial court erred by relying on professional reports without providing parties opportunity to cross-examine court-appointed psychiatrist and submit evidence in connection with issues reports raised]; Waldman v Waldman, 95 AD2d 827 [2d Dept 1983] [trial court's power to direct psychiatric examination is not dependent upon consent of parties; however, results of examination must be made available to parties and attorneys]).[FN6]
In this case, each party was provided with a copy of the report and more than ample time to review it. At trial, each party will receive a full and fair opportunity to expose the report's inadequacies on cross-examination and to present material on rebuttal. Accordingly, respondent's application to preclude admission of the report based on the contention that admissibility is contingent upon consent is denied.
D. Admissibility of Expert's Recommendation on Ultimate Issue
While experts may offer guidance and inform the court, determination of the ultimate issue in a custody case remains a judicial function, not one for an expert. Nevertheless, recommendations by experts are admissible and constitute one of the numerous factors to be considered in making a custody or visitation determination (see Neuman v Neuman, 796 NYS2d 403 {19 AD3d 383} [2d Dept 2005] [recommendations of court-appointed experts are one factor to consider in making custody determination and are entitled to some weight; however, they are not determinative and do not usurp judgment of trial judge]), unless unsupported by the record (Picot v Barrett, 8 AD3d 288 [2d Dept 2004] [recommendations of court-appointed psychologist are not determinative of ultimate issue in controversy, but are factor to be considered, unless unsupported by record]).
Accordingly, Dr. Carlin's recommendations regarding custody and visitation will be admitted into evidence unless unsupported by the record, and considered by this Court as one of many factors relevant to the ultimate determination in this case.
4. Obtaining Documents from a Non-testifying Nonparty Expert
A. Disclosure Requires Compliance with the Civil Practice Law and Rules
The Civil Practice Law and Rules makes several provisions for a party to seek documents from a nonparty by the use of an attorney-issued subpoena duces tecum. These provisions [*8]include CPLR § 3120(1)(i), allowing for the pretrial discovery of documents, and CPLR § 2301, allowing for the production of documents relevant to a pending judicial proceeding. In the instant case, petitioner failed to comply with the statutory requirements governing pretrial disclosure and because a trial subpoena cannot be used to circumvent the statute, the subpoena duces tecum seeking the production of Dr. Cohen's records and reports must be quashed.
Petitioner's effort runs afoul of the statutory provisions regulating disclosure in several ways. First, Civil Practice Law and Rules § 3102(d) provides that during trial, "disclosure may be obtained only by order of the trial court on notice." In the present case, petitioner's belated attempt to obtain Dr. Cohen's records, made six months after the commencement of the trial, was initiated without an application to or an order from this Court.
Second, custody proceedings are considered "special proceedings" and as such are governed by article 4 of the Civil Practice Law and Rules (Allen v Farrow, 197 AD2d 327 [1st Dept 1994]; Dominick R. v Jean R., 7 Misc 3d 1027A [Fam Ct, Kings County 2005]; Atkinson v Trehan, 70 Misc2d 612 [Civ Ct, New York County 1972]). Unlike discovery requests made pursuant to article 31, which provides for "disclosure by stipulation or upon notice without leave of court" (CPLR § 3102 [b]), article 4 provides that "leave of court shall be required for disclosure" in a special proceeding (CPLR § 408; Dominick R. v Jean R., 7 Misc 3d 1027A, supra ). In this case, petitioner did not seek or obtain leave of court.
Third, Civil Practice Law and Rules § 3101(a)(4) provides for disclosure by a nonparty "upon notice stating the circumstances and reasons such disclosure is sought or required (Kaufman v Red Ground Corp., 170 AD2d 484 [2d Dept 1990]; In re Ehmer, 272 AD2d 540 [2d Dept 2000]). In addition, disclosure from a nonparty in the Second Department requires proof of "special circumstances"[FN7] (Kaufman v Lund Fire Products Co. Inc., 8 AD3d 242 [2d Dept 2004]; Brooklyn Floor Maintenance Co. v Providence Washington Insurance Co., 296 AD2d 520 [2d Dept 2002]; Middleton v Dovale, 4 AD3d 345 [2d Dept 2004]). In this case, a notice setting forth the reasons why disclosure was sought did not accompany the subpoena; nor did petitioner allege let alone prove "special circumstances."
If petitioner wished to obtain Dr. Cohen's records and reports, she had every opportunity to make the appropriate application for pretrial disclosure in conformity with the procedures set forth in the statute. Having failed to do so she may not now resort to "[a] trial subpoena as a 'fishing expedition' to obtain materials that could have been obtained in pretrial disclosure" (Mestel & Co. v Smythe Masterson & Judd, 215 AD2d 329 [1st Dept 1995]), nor can a trial subpoena be used as a substitute for discovery, to ascertain the existence of evidence (Matter of Terry D., 81 NY2d 1042, 1044 [1993]) or, to obtain otherwise unavailable discovery.
The provisions of articles 31 and 4 of the Civil Practice Law and Rules regulating disclosure are not mere formalities. They were designed to assure that nonparties will not be [*9]unduly burdened with discovery demands and that discovery from nonparties is conducted in a fair and open manner. These requirements cannot be circumvented or avoided by resorting to the mid-trial use of an attorney's subpoena (see e.g. Brussels Leasing Ltd. Pshp. v Henne, 174 Misc2d 535 [Sup Ct, Queens County 1997], lv dismissed 256 AD2d 406 [2d Dept 1998] [subpoena seeking disclosure of third party documentation quashed for failure to comply with relevant provisions of CPLR]; Mestel & Co. v Smythe Masterson & Judd, 215 AD2d 329, supra , [subpoenas issued during trial properly quashed where plaintiff improperly sought to utilized trial subpoenas as discovery device and fishing expedition to secure discovery that counsel neglected to obtain in pretrial disclosure]; Timoney v Newmark & Company Real Estate, Inc., 299 AD2d 201 (1st Dept 2002), lv denied 99 NY2d 610 [2003] [correct procedure for requesting documents from nonparty is set forth in CPLR § 3120 [b]; party cannot avoid this procedure by serving subpoena)].[FN8]

B. Disclosure of Attorney Work Product and Materials Prepared in Anticipation of Litigation
1. Evidentiary Showing Required to Overcome Qualified Immunity
Civil Practice Law and Rules § 3101(c) provides that "the work product of an attorney shall not be obtainable" and § 3101(d)(2) provides that materials prepared in anticipation of litigation are protected by qualified immunity:
[M]aterials otherwise discoverable...prepared in anticipation of litigation or for trial by or for another party, or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent), may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.
Where, as here, an expert has been retained by an attorney to act as a consultant to assist in analyzing or preparing the case, that expert is "generally seen as an adjunct to the lawyer's strategic thought processes, thus qualifying for complete exemption from disclosure under CPLR § 3101(c), attorney's work product, and the mental impressions exclusion of CPLR § 3101(d)(2) [*10]as well" (Santariga v McMann, 161 AD2d 320 [1st Dept 1990] [trial court erred in directing discovery of non-testifying expert's report which was prepared in anticipation of litigation, absent demonstration of substantial need or inability to obtain substantial equivalent by other means]; Matter of Rosalie S., 172 Misc2d 176 [Fam Ct, Kings County 1997] [motion to quash subpoena granted where subpoena sought report prepared by expert retained pursuant to County Law § 722-c since report constituted attorney work product prepared for litigation and protected from disclosure under CPLR § 3101[c]).[FN9]
Petitioner does not deny that Dr. Cohen's records and reports were prepared in anticipation of litigation or for trial. She does, however, assert that Dr. Cohen was not "retained" by respondent as an "expert" but rather "court-appointed" pursuant to County Law § 722-c [FN10] to conduct a "peer review." Consequently, petitioner claims that Dr. Cohen is not respondent's representative or expert and that the immunity and qualified immunity provided by CPLR §§ 3101(c) and (d)(2) respectively are inapplicable. This contention is unavailing for several reasons.
First, a mental health professional retained by an attorney is that party's "representative" for purposes of CPLR §§ 3101(d)(2) and 3101(c) (Matter of Lenny McN., 183 AD2d 627 [1st Dept 1992] [social worker employed by Law Guardian in custody proceeding, is "representative" of child for purposes of CPLR § 3101[c], therefore, Family Court erred in ordering disclosure of social worker's files]; Matter of Rebecca B., 227 AD2d 315 [1st Dept 1996] [communications with social worker hired by Law Guardian implicate attorney-client privilege, or immunity from disclosure for attorney work product and material prepared for litigation; thus, subpoenas demanding testimony of social worker properly quashed]).
Second, Dr. Cohen's records and reports constitute attorney work product or material prepared in anticipation of litigation and as a result, are protected by CPLR §§ 3101(c) and (d)(2). The source of Dr. Cohen's compensation and his review of Dr. Carlin's report, are irrelevant to the question of immunity. Neither statute, case law nor public policy support petitioner's claim that an expert retained pursuant to the County Law automatically sacrifices the statutory protections. Indeed, to the extent that issue has been squarely addressed, the Appellate Division Second Department has held that no significance whatsoever can attach to this fact (Mulvaney v Dubin, 80 AD2d 566, 566-567 [2d Dept 1981], revd on other grounds 55 NY2d 668 [*11][1981]). In Mulvaney v Dubin (80 AD2d at 566-567), the Court specifically rejected the distinction urged by petitioner upon this Court between a privately paid expert and an expert compensated by the County:County Law § 722-c provides for the rendition, at public expense, of certain essential services as an adjunct to a [respondent's] constitutional right to the effective assistance of counsel, and therefore no restriction upon the exercise of this fundamental right (e.g., by deeming the psychiatrist to be the court's witness rather than [respondent's]) can be drawn from the fact of public funding (Id.).
Petitioner's assertion that respondent's counsel does not represent Dr. Cohen, and that he therefore lacks standing to assert the privilege and challenge the subpoena, is likewise without merit. Civil Practice Law and Rules § 3101(b) provides that upon an objection by a person entitled to assert the privilege, privileged matter shall not be obtainable. The information contained in Dr. Cohen's records concerns respondent, not Dr. Cohen. Therefore, the privilege being asserted belongs not to Dr. Cohen but to respondent. Accordingly, respondent has an interest in the materials and standing to assert the privilege since the materials may contain privileged information concerning him (Brentwood Pain & Rehab Services v Eagle Insurance Company, 2 Misc 3d 1005A [Civ Ct, Queens County 2004] [defendant had standing to challenge subpoena directed toward nonparty witness since he had proprietary rights or privilege over nonparty witness who conducted peer review at his request]; King v State Farm Mutual Automobile, 198 AD2d 748 [3d Dept 1993] [defendant had standing to move to quash nonparty subpoena issued for witness who performed independent medical examination at defendant's request]).[FN11]
ORDERED that respondent's motion to exclude Dr. Carlin's report is denied as premature with leave to renew at the conclusion of the direct case of petitioner and the Law Guardian;
ORDERED that respondent's motion to exclude Dr. Carlin's recommendations as to custody and visitation is denied as premature with leave to renew at the conclusion of the trial;
 ORDERED that petitioner's application to reopen the direct examination of Dr. Carlin is granted
ORDERED that respondent's motion to quash the subpoena duces tecum seeking records and reports from Dr. Larry Cohen is granted;
[*12]
ORDERED that petitioner's application for a stay of this order pending appeal is denied.
ORDERED that Pursuant to § 1113 of the Family Court Act, an Appeal must Be Taken Within 30 Days of Receipt of the Order by Appellant in Court, 35 Days from the Mailing of the Order to the Appellant by the Clerk of the Court, or 35 Days after Service by a Party or Law Guardian upon the Appellant, Whichever Is Earliest.

E N T E R:

HON. EMILY OLSHANSKY, J.F.C.

Footnotes

Footnote 1: Thereafter, the attorneys were directed to submit memoranda of law on the issue of the report's admissibility. Respondent's memorandum dated February 27, 2005, was filed and served on April 19, 2005. Petitioner's opposition dated April 18, 2005 and the Law Guardian's dated April 21, 2005, were filed and served thereafter. This Court rendered an oral decision from the bench on May 23, 2005 and notified the parties that a more lengthy written decision would follow.

Footnote 2: See also Nuzzo v Castellano, 254 AD2d 265 (2d Dept 1998) (trial court erred by allowing plaintiff's expert, who had not examined plaintiff, to testify as to diagnosis of plaintiff's injury based on MRI films not in evidence where films was used as principal basis for expert's opinion not merely to confirm opinion formed from other permissible sources); Beresford v Waheed, 302 AD2d 342 (2d Dept 2003) (trial court erred by allowing expert to base opinion on report not in evidence since testimony failed to establish whether he relied on report to form diagnosis or merely to confirm already established diagnosis). 

Footnote 3: See also Casiero v Stamer, 308 AD2d 499 (2d Dept 2003) (trial court erred in permitting plaintiff's expert to give opinion testimony regarding nature of injuries sustained by famous athletes, none of whom he treated); Raquel Adkins v Queens Van-Plan, Inc., 293 AD2d 503 (2d Dept 2002) (trial court properly permitted plaintiff's expert to state his opinion based on examination of plaintiff and review of MRI films in evidence; however, court erred in allowing expert to summarize and read from records of plaintiff's treating physicians, as records were not in evidence and physicians did not testify).

Footnote 4: In D'Esposito v Kepler, 14 AD3d at 510 (2d Dept 2005), the Court cited Chambers v Bruce, 292 AD2d 525 (2d Dept 2002), in which it held that although the Family Court erred in admitting a home study into evidence, that error was harmless since the reports were based on statements of parties who testified at trial and corroborated much of the information contained in the report. The Court also cited Murtari v Murtari, 249 AD2d 960 (4th Dept 1998), lv dismissed 92 NY2d 919 (1998), cert denied 525 US 1072 (1999), in which the Appellate Division, Fourth Department held that the trial court improperly admitted a report of court-appointed psychologist into evidence because the report was not submitted under oath and the expert was not available for cross-examination. See also Kranock v Ranieri, 17 AD3d 1004 (4th Dept 2005) (upholding Family Court's custody determination without considering expert's report improperly admitted since expert was unavailable for cross examination).

Footnote 5: The Court in Wagman, emphasizing the importance of the requirement for independent proof of reliability, stated that to the extent that prior cases had permitted an expert to testify that he or she relied upon out-of-court material of a type ordinarily relied upon by experts in the field, and have not required proof that the out-of-court material was reliable, those cases should be not be followed (Id. at 90). 

Footnote 6: See also Thaxton v Morro, 222 AD2d 955 (3d Dept 1995) (Family Court properly relied on reports and evaluations although ordered without consent of parties as long as court afforded parties opportunity to explain or rebut material contained therein); Anonymous v Anonymous, 34 AD2d 942 (1st Dept 1970) (professional reports may come into evidence without consent; however, trial court can not use information contained therein unless it has been disclosed and accuracy checked during hearing); Krebs v Krebs, 83 AD2d 989 (4th Dept 1981) (trial court erred by relying on reports without consent and failing to provide parties with opportunity to review them; accuracy of reports must be established and there must be opportunity to rebut material contained therein).

Footnote 7: "Special circumstances" exist where evidence may be lost or altered (Kaufman v Lund Fire Products Co. Inc., 8 AD3d 242) or "where some other unique factual situation exists such as proof that the information sought to be discovered cannot be obtained from other sources" (Brooklyn Floor Maintenance Co. v Providence Washington Insurance Co., 296 AD2d 520; Dioguardi v St. John's Riverside Hosp., 144 AD2d 333 [2d Dept 1988]; Bostrom v William Penn Life Insurance Co., 285 AD2d 482 [2d Dept 2001]).

Footnote 8: See also Tyrrell v Tyrrell, 54 AD2d 931 (2d Dept 1976) (non-party's failure to produce documents in response to subpoena not punishable by contempt where plaintiff failed to obtain order allowing disclosure pursuant to CPLR); Henriques v Boitano, 6 Misc 3d 129A (Civ Ct, New York County 1999), affd 2002 NY Misc Lexis 209 [App Term 1st Dept 2002], mod as to fees 304 AD2d 467 (1st Dept 2003); Bldg Management Co. Inc. v Schwartz, 3 Misc 3d 351 (Civ Ct, New York County 2004). While the majority of these cases were decided prior to the recent amendment to CPLR § 3120, the principle remains the same in the instant circumstances since the statutory amendment did not obviate the need in the Second Department for a party seeking mid-trial disclosure from a non-party non-testifying expert to obtain leave of court upon proof of special circumstances.

Footnote 9: See also Barrowman v Niagara Mohawk Power Corporation, 252 AD2d 946 (4th Dept 1998) (report prepared by plaintiff's vocational rehabilitation counselor constituted material prepared for litigation and was not discoverable absent showing that defendant had a substantial need for report, which defendant did not establish); Wallace v Benedictine Hospital, 124 AD2d 433 (3d Dept 1986) (disclosure of expert's report prepared for litigation is governed by CPLR § 3101[d], and such report is not discoverable absent showing that party is unable to obtain substantial equivalent by other means).

Footnote 10: County Law § 722-c provides that "upon a finding in an ex parte proceeding that investigative, expert or other services are necessary and that the defendant or other person described in section two hundred forty-nine or section two hundred sixty-two of the family court act...is financially unable to obtain them, the court shall authorize counsel, whether or not assigned in accordance with a plan, to obtain the services on behalf of the defendant or such other person."

Footnote 11: See also Kephart v Burke, 306 AD2d 924 (4th Dept 2003) (defendant had standing to move to quash nonparty subpoena directed to defendant's physician and manager of firm that provided medical evaluations, as he had proprietary interest in materials sought, which might contain privileged information as to him); Henriques v Boitano, 6 Misc 3d 129A (Civ Ct, New York County 1999), affd 2002 NY Misc Lexis 209 [App Term 1st Dept 2002], mod as to fees 304 AD2d 467 (1st Dept 2003) (respondent had standing to move to quash subpoena served on third party since respondents had privacy interest in third party's financial, medical and other records subpoenaed improperly by petitioner).