*728 OPINION OF THE COURT
Michael A. Ciaffa, J.
Plaintiff, All-In-One Medical Care, EC., commenced this no-fault action against defendant, Government Employees Insurance Company (GEICO), following GEICO’s denial of plaintiffs claims for no-fault benefits for physical therapy services provided in January and February 2011. Plaintiff’s assignor, Santo Fernandez, was injured in an accident in May 2010. GEICO denied the claims based upon the results of independent medical examinations (IMEs) conducted in October 2010 by three different doctors (Drs. Emmanuel, Sesto, and Yiu). GEICO defends this case at trial solely upon the IME and live testimony of the first doctor, Dr. Jacquelin Emmanuel.
Pursuant to the parties’ stipulation, the trial of plaintiff’s claim was limited to the defense of lack of medical necessity. Dr. Emmanuel was defendant’s only witness. Plaintiff presented no witnesses in rebuttal. Each party submitted medical records for the court’s consideration. Their respective submissions were introduced into evidence on consent and without objection.
According to Dr. Emmanuel’s testimony, he examined Mr. Fernandez twice, first on September 13, 2010, and again on October 25, 2010. The first exam was conducted shortly after Mr. Fernandez had undergone arthroscopic shoulder surgery. Dr. Emmanuel concluded, at that time, that Mr. Fernandez’s spinal sprains/strains had “resolved,” but his right shoulder injuries were still “healing.” After noting Mr. Fernandez’s complaints of tenderness in his right shoulder, Dr. Emmanuel found significant limitations in the right shoulder’s range of motion. Dr. Emmanuel accordingly recommended that Mr. Fernandez should continue to receive physical therapy for his right shoulder, three times a week, for the following four weeks.
Dr. Emmanuel reexamined Mr. Fernandez on October 25, 2010. Mr. Fernandez’s complaints at that time included “radiating neck pain and pain in his low back and right shoulder.” However, upon examination, Mr. Fernandez displayed “no acute distress.” Dr. Emmanuel found no evidence of tenderness or spasm upon palpation of the cervical or lumbar spinal musculature. Range of motion was normal or near normal. The right shoulder arthroscopic entry portals had healed. Dr. Emmanuel found “no impingement signs” in the right shoulder.
Based upon the latter examination findings, Dr. Emmanuel concluded that “no further physical therapy or massage is medi *729 cally necessary.” His report further explained: “Although there were findings of slightly decreased ranges of motion in the cervical spine and right shoulder regions, this is subjective rather than objective. There is no evidence of spasms or instability and all orthopedic tests are negative.”
Dr. Emmanuel’s trial testimony echoed his IME findings. He explained in a clear, consistent, and credible manner why he had concluded that Mr. Fernandez required no further treatments. Notwithstanding the existence of continued subjective complaints, Dr. Emmanuel’s objective examination of Mr. Fernandez found only mild range of motion limitations. Absent objective evidence of tenderness or spasm, he saw no need for continued physical therapy.
Under current Appellate Term precedent, such trial evidence, if credited, is sufficient to make out a lack of medical necessity defense to post-IME services, and shift the burden to plaintiff of demonstrating the medical necessity of post-IME treatments. (See Amato v State Farm Ins. Co., 40 Misc 3d 129[A], 2013 NY Slip Op 51113[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013].) This court, as factfinder at trial, concludes that Dr. Emmanuel had a sound factual basis and medical rationale for his opinion that no further treatment was necessary. Accordingly, unless plaintiff satisfied its burden of proving to the contrary, defendant is entitled to judgment dismissing plaintiffs no-fault claim.
In the face of such showing by defendant, plaintiff attempted to meet its burden through submission of post-IME medical records. “Follow-up progress notes” from Dr. Jean Claude Demetrius document monthly post-IME evaluations of Santo Fernandez that were performed between November 2010 and February 2011. In his January 11, 2011 report, for example, Dr. Demetrius notes that the patient’s pain course “has been moderately improved with current physical therapy and acupuncture” but “still has significant pain in neck and lower back with radiating pain and paresthesia to the both upper and lower extremities.” In addition, Mr. Fernandez continued to complain about shoulder pain. Upon examination of the patient’s shoulders, Dr. Demetrius found mild tenderness in the right shoulder, severe tenderness in the left shoulder, and decreased range of motion in the upper extremities.
Based upon these findings and other documented examination results, Dr. Demetrius’s “diagnostic impression” included cervical and lumbar strain/sprain, cervical and lumbar disco *730 genic disease/radiculopathy, and right/left shoulder joint pain secondary to contusion and ligament/tendon tear. His “diagnostic plan” called for “[c]ontinued physical therapy” and a follow-up reevaluation in four to six weeks. Similar findings and recommendations were made in his earlier and later reports.
Submission of these records, as part of a stipulated evidence package, raises an interesting evidentiary question. Can the plaintiff meet its own burden to prove medical necessity solely through submission of post-IME medical records? Or must it submit live witness testimony from a treating doctor, or other medical expert, establishing by expert proof that the subject services were appropriate and medicadly necessary?
The decision in Amato did not reach the issue. Unlike this case, the plaintiff in Amato submitted “no evidence.” (See 40 Misc 3d 129[A], 2013 NY Slip Op 51113[U], *2.) Since the plaintiff in Amato “proffered no evidence” respecting the patient’s condition following the date of the IME, any finding that the patient’s condition may have “worsened after the IME” would be “speculative, at best.” (Id.) Consequently, the Appellate Term directed entry of judgment in favor of defendant, dismissing the complaint, due to the complete absence of rebuttal proof from the plaintiff respecting the necessity of the post-IME treatments.
Here, in contrast, plaintiff did not rest upon the strength of its cross-examination of Dr. Emmanuel. Instead, it submitted the treating doctor’s records of the post-IME examinations. Can this court accept the findings and conclusions of the treating doctor without hearing his testimony in court at trial? In the absence of specific guidance from the Appellate Term, this court necessarily must look to decisions made by other appellate courts. Since this court sits under the Second Department’s umbrella, it looks principally to that Court’s decisions in analogous circumstances and related contexts. The rulings made in such cases are far from uniform.
In one leading case involving a claim of medical malpractice, the Appellate Division, Second Department, addressed at length the admissibility of physicians’ office records under the “business records” exception to the hearsay rule. (Wilson v Bodian, 130 AD2d 221, 228-234 [2d Dept 1987], citing CPLR 4518.) Plaintiffs evidence in that case included the office records of a treating doctor, Dr. Hyman. Although plaintiffs counsel claimed to have subpoenaed the doctor, “[n] either the process server nor any other witness nor any affidavit of service was produced to *731 verify the unavailability of Dr. Hyman.” (130 AD2d at 224.) When the records were offered into evidence, the defendant objected on hearsay grounds. As counsel noted in his objection, “I cannot cross-examine those records.” (Id. at 225.)
On defendant’s appeal from a jury verdict in plaintiffs favor, defendant renewed his objection to the admission of the records. The Appellate Division rejected the argument. After surveying “inconsistent” rulings made by other courts, the Second Department “reaffirm[ed] that a physician’s office records, supported by the statutory foundations set forth in CPLR 4518 (a), are admissible in evidence as business records.” (130 AD2d at 230-231.) “Similar to hospital records, it is the business and duty of a physician to diagnose and treat a patient’s illness. Therefore, entries in the office records germane to diagnosis and treatment are admissible, including medical opinions and conclusions.” (Id. at 231 [emphasis added].)
Since the decision in Wilson v Bodian, the Second Department has not consistently followed the last part of its ruling. In some cases, it continues to hold that a doctor’s office records, including “the medical opinions contained therein,” are properly admissible as evidence if “germane to the diagnosis and treatment” of the doctor’s patient. (See Murray v Weisenfeld, 37 AD3d 432, 433 [2d Dept 2007].)
Other decisions take a very different approach. In Wagman v Bradshaw (292 AD2d 84 [2d Dept 2002]), for example, the Court drew a distinction between admissible medical records containing the results of specified medical tests (e.g., MRIs), and subjective opinion evidence interpreting the MRI test results in “a written report prepared by a nontestifying healthcare professional.” (292 AD2d at 88.) According to the Court’s decision in Wagman, such a report would be deemed “patently inadmissible hearsay as the declarant, the preparer of the report, is unavailable for cross-examination.” (Id.)
Similarly, in Daniels v Simon (99 AD3d 658 [2d Dept 2012]), the Second Department held that the Supreme Court “correctly declined to admit into evidence various medical reports prepared by physicians who examined Deborah Daniels on behalf of her insurance carrier. The reports of these nontestifying physicians were inadmissible because the physicians were unavailable for cross-examination.” (99 AD3d at 660, citing inter alia Wagman v Bradshaw.) Without mentioning Wilson v Bodian, the Court in Daniels v Simon concluded that a medical report “is not admissible as a business record where, as here, it contains the physician’s opinion or expert proof.” (Id.)
*732 Plaintiffs proof of medical necessity in this case rests entirely upon post-IME reports, containing the treating doctor’s findings and opinions respecting the need for continued physical therapy treatments. Consequently, under the principles announced in Wagman v Bradshaw and its progeny, defendant could have objected to the submission of the reports prepared by Dr. Demetrius unless he could be cross-examined about his findings and opinions. Had defendant made such an objection in advance of trial, the parties could have obtained an in limine ruling from the court, and, depending upon the court’s ruling, they could have adjusted their presentations accordingly.
But defendant voiced no such objection. To the contrary, the post-IME records were part of a stipulated package of medical records that both sides deemed relevant to the issue at hand. In view of that stipulation, this court need not weigh in, at this time, on whether Wilson or Wagman should be followed in no-fault matters where the plaintiff offers medical record evidence of post-IME medical treatments which includes an uncalled treating doctor’s opinions. To the extent that the subject reports contain examination findings respecting Mr. Fernandez’s condition subsequent to the date of the last IME, the reports are clearly admissible as records “germane to diagnosis and treatment.” (Wilson v Bodian at 231.) To the extent the reports can be read as expressing an opinion regarding the patient’s need for additional physical therapy treatments, in the absence of objection that opinion may be weighed, along with the other evidence, in determining whether plaintiff met its burden of establishing the medical necessity of the post-IME treatments.
However, that conclusion does not end the court’s analysis. Although plaintiffs proof of post-IME examinations by Dr. Demetrius might be enough to make out a prima facie case for medical necessity under Amato, submission of those records, without supporting testimony from Dr. Demetrius, raises a second issue, namely, whether the court should draw a negative inference from plaintiffs decision to not call Dr. Demetrius as a witness.
Again, the court looks principally to Second Department rulings in related contexts. Although the leading cases do not involve no-fault matters, general principles announced in such cases have equal applicability to the case at bar.
Both in cases heard by the court, and in cases heard by a jury, an adverse inference may be drawn if a party fails to “call a witness who would normally be expected to support that party’s version of events.” (See Matter of Adam K., 110 AD3d 168, 176- *733 178 [2d Dept 2013].) The rationale for the rule rests on “the commonsense notion” that a party will normally call a witness who would be expected to provide testimony in the party’s favor. (See Matter of Adam K., 110 AD3d at 181.)
In cases where a party fails to call a treating doctor, an adverse inference may be drawn if the doctor is under a party’s control, and can provide relevant, noncumulative testimony regarding a patient’s condition. (See Matter of Adam K., 110 AD3d at 180, citing Zito v City of New York, 49 AD3d 872, 874 [2d Dept 2008]; see also Wilson v Bodian, 130 AD2d at 234.) Treating doctors, unlike reviewing doctors, possess “the greatest knowledge about the patient.” (Matter of Adam K. at 180.) Therefore, as a general rule, a party’s failure to call the treating doctor to give testimony on a material issue allows the court to draw an adverse inference “as to any evidence which the missing . . . witness ‘would be in a position to controvert.’ ” (Matter of Adam K. at 179, quoting Matter of Jane PP. v Paul QQ., 65 NY2d 994, 996 [1985].)
However, the rule “may not be used to draw any inferences beyond that.” (Matter of Adam K. at 179, quoting Matter of Jane PP. v Paul QQ. at 996.) An adverse inference, by itself, “does not permit establishment of the ultimate conclusion” that must be reached in a given matter. (Matter of Adam K. at 179.)
In the instant case, the ultimate issue to be decided is whether plaintiff met its burden of establishing the medical necessity of post-IME physical therapy treatments. Although Dr. Emmanuel’s testimony respecting his October 2010 examination may have been enough to shift the burden to plaintiff to establish the necessity of the post-IME treatments in January and February 2011, plaintiff countered Dr. Emmanuel’s testimony by submitting Dr. Demetrius’s post-IME medical records. Those records not only went into evidence without objection, but, more importantly, were not rebutted by any opposing proof from defendant.
Critically, Dr. Demetrius’s monthly medical reports include detailed evaluations of the patient’s ongoing complaints, the treating doctor’s findings, and the doctor’s recommendation for continuation of physical therapy treatments. Moreover, the reports, on their faces, set forth a facially valid factual basis and medical rationale for continuing the treatments before, during, and after January 2011. Based upon the treating doctor’s opinion that Mr. Fernandez’s condition had “moderately *734 improved” with physical therapy, but he was still suffering from right and left shoulder joint pain, decreased range of motion in the upper extremities, and radiating pain and paresthesia to both the upper and lower extremities, plaintiff continued to provide physical therapy treatments to Mr. Fernandez.
Unlike the circumstances presented in Amato, plaintiffs evidence takes the case out of the realm of “speculation” regarding the patient’s post-IME condition. On the other hand, under “missing witness” principles, plaintiffs failure to call Dr. Demetrius cannot be ignored. By not calling him as a witness to give testimony regarding his diagnosis and treatment, plaintiff avoided exposing him to cross-examination. Since he clearly was in a position to give relevant, noncumulative testimony on a contested medical necessity issue, an adverse inference arises. Plaintiffs failure to call him therefore allows the court to infer that he would not have been able to meaningfully controvert Dr. Emmanuel’s testimony respecting the patient’s condition in September and October 2010.
But that adverse inference helps defendant only to a limited extent. At least where, as here, defendant submitted no evidence contesting plaintiffs admissible medical record evidence respecting the patient’s condition in January and February 2011, the absence of testimony from Dr. Demetrius is not dis-positive.
Conclusion
In the final analysis, defendant’s proof satisfied its burden under Amato, shifting the burden to plaintiff to demonstrate through admissible proof that the post-IME services rendered by plaintiff were medically necessary. Plaintiff satisfied that burden through submission of medical records containing findings and opinions of the treating doctor, Dr. Demetrius. The medical records document the factual basis and medical rationale for the continued post-IME physical therapy treatments. Although plaintiffs failure to call Dr. Demetrius as a witness gives rise to a limited adverse inference, that adverse inference by itself is not enough to defeat plaintiffs otherwise sufficient medical record proof of medical necessity.
Accordingly, judgment is rendered for the plaintiff, for the full principal amount claimed ($321.14), with interest, costs, disbursements and attorney’s fees as allowed by law.