■ PRISCILLA BORDEN, Respondent, v PHILIP G. BRADY, Appellant. — Appeal from a judgment of the Supreme Court in favor of plaintiff, entered January 20, 1981 in Broome County, upon a verdict rendered at Trial Term (Smyk, J.). This personal injury action arises out of a 1977 motor vehicle accident which occurred in the Village of Johnson City. Plaintiff, who was a passenger in a parked bus which was struck by an automobile driven by defendant, allegedly suffered neck and back injuries. Defendant conceded liability; trial was had only on the issue of damages. The jury returned a verdict in plaintiff's favor in the amount of $87,500. In our view, a reversal is required because of error committed in the reception of medical evidence at trial. Plaintiff's treating orthopedic surgeon was called as a witness on her behalf. During his direct examination, he testified that he had referred plaintiff to a neurologist for evaluation and had used the neurologist's report in making his final medical prognosis. Based upon that testimony, Trial Term not only permitted plaintiff's expert to express an opinion that plaintiff's condition was permanent, but also received the neurologist's report into evidence and allowed it to be read to the jury. We do not quarrel with the general proposition that the strict rule of *People v Keough* (276 NY 141) that expert testimony must be based on material in evidence has largely been abandoned, and that such testimony is not rendered inadmissible because it is partly based upon the hearsay reports of others, provided that such data are of the type reasonably relied upon by

experts in the field in forming opinions or inferences upon the subject (*People v Sugden*, 35 NY2d 453, 460-461; *People v Stone*, 35 NY2d 69, 75-76; cf. Proposed Code of Evidence for the State of New York, § 703). However, in the instant case, the use of the medical data permitted by the trial court went substantially beyond the foregoing development in the rules of evidence concerning the admissibility of expert opinions. The report constituted an expression of opinion on the crucial issue of the permanency of plaintiff's injuries and formed the principal basis for the expert witness' opinion on the same issue, not merely a link in the chain of data upon which that witness relied (cf. *People v Stone*, 35 NY2d 69, 76, *supra; People v Sugden*, 35 NY2d 453, 460-461, *supra*). Moreover, plaintiff's expert not only was permitted to identify the report upon which he relied and to explain its significance in forming his opinion (*People v Sugden, supra*, pp 460-461; *People v Stone, supra*, p 76); the report itself was admitted into evidence and read to the jury. The modification of the strict *Keough* rule under discussion was not intended to carve out such a new exception to the hearsay rule. For the foregoing reasons, a reversal for a new trial on the issue of damages is required. Judgment reversed, on the law, with costs, and matter remitted for a new trial solely on the issue of damages. Sweeney, J. P., Kane, Casey and Levine, JJ., concur.

Yesawich, Jr., J., concurs in the following memorandum. Yesawich, Jr., J. (concurring). I concur in the result reached, but disagree with the majority's view of the state of the law respecting the extent to which an expert's opinion may be predicated on hearsay. In a marked departure from the traditional rule that expert opinion testimony must be based on material in evidence (see *People v Keough*, 276 NY 141, 146), the Court of Appeals in *People v Sugden* (35 NY2d 453, 460) declared that a medical expert "may rely on material, albeit of out-of-court origin, if it is of a kind accepted in the profession as reliable in forming a professional opinion". By permitting reliable but otherwise inadmissible data to serve as a basis for an expert's opinion, the court was harmonizing the New York law of evidence with the Federal rule now found in rule 703 of the Federal Rules of Evidence (US Code, tit 28) (*People v Sugden*, 35 NY2d 453, 459; Prince Evidence, 27 Syracuse L Rev 460). Reliability of the material is the touchstone; once reliability is established, the medical expert may testify about it even though it would otherwise be considered inadmissible hearsay (*Salathiel v State of New York*, 96 Misc 2d 72, 74; *People v Mack*, 86 Misc 2d 364, 367; *Iannucci v John Hancock Mut. Life Ins. Co.*, 83 Misc 2d 733; 736). The underlying rationale is that since physicians make life and death decisions in reliance upon medical reports filed by other doctors and medical personnel, those reports, though not independently admissible in evidence, enjoy a singular trustworthiness (Advisory Committee Note to Federal Rules of Evidence, § 703). If the dependability of the neurosurgeon's report had been established, passages relevant to the orthopedic surgeon's opinion could properly have been brought to the jury's attention (see *Baumholser v Amax Coal Co.*, 630 F2d 550, 553). Here, however, no external circumstance guaranteeing its reliability existed (see *Bryan v John Bean Div. of FMC Corp.*, 566 F2d 541, 546). The mere fact that it was a medical report did not suffice to render it reliable particularly in light of the fact that the neurosurgeon's examination had occurred more than one year after the commencement of this action. Moreover, the report was not secured to enable the treating physician to render treatment, but rather to reinforce his diagnosis in a personal injury suit in which trial was imminent. Furthermore, there is no indication defendant had any awareness of the existence of the report (cf. *O'Gee v Dobbs Houses, Inc.*, 570 F2d 1084, 1089); meaningful cross-examination concerning its validity and the neurosurgeon's qualifications was, therefore, foreclosed to him, and

this lack of advance notice also deprived defendant of the opportunity to retain his own expert to dispute the neurosurgeon's findings.