*255 OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
A hearing was held before this court to determine whether or not there is probable cause to believe that the respondent is a sex offender requiring civil management. The hearing was commenced on October 22, 2007 and concluded on November 2, 2007. At the hearing, respondent’s attorney from Mental Hygiene Legal Service made various oral applications before this court. The court permitted the petitioner to respond to the respondent’s oral applications in writing and permitted the respondent time to submit a reply.
The respondent, through his counsel, first argued that he did not receive notice pursuant to Mental Hygiene Law § 10.05 (e) that he was being referred to a case review team for evaluation. Respondent’s contention was that this court lacks jurisdiction to entertain the article 10 petition due to respondent’s failure to receive the subject notice. At the time of the hearing, the petitioner asserted that the Mental Hygiene Law § 10.05 (e) notice was provided to the respondent but petitioner was not in possession of a copy of the notice showing receipt by the respondent.
' Respondent points out that the notice generated under Mental Hygiene Law § 10.05 (g), which requires that the respondent be notified that the case review team finds him to be a sex offender requiring civil management, was delivered to the respondent and the space for the deliverer to sign and date was filled in. However, the Mental Hygiene Law § 10.05 (e) notice produced by the petitioner at the hearing bore no such signature or date indicating that the notice was delivered to the respondent. In addition, respondent denies receiving the Mental Hygiene Law § 10.05 (e) notice. Therefore, respondent argues that failure to provide the requisite notice is a jurisdictional defect that mandates dismissal of the petition.
Respondent further argues that statements made by the respondent to the psychiatric examiner, Megan Lynch, Psy.D., should be stricken because they were obtained in violation of respondent’s due process rights since he did not receive the Mental Hygiene Law § 10.05 (e) notice. Respondent’s contention is that failure to give him the Mental Hygiene Law § 10.05 (e) notice deprived the respondent of the opportunity to educate himself about his statutory rights and the consequences of his participation in the examination conducted by Dr. Lynch. Respondent asserts that there is no indication he knew of the exis *256 tence of article 10 until he arrived at the psychiatric examination.
Petitioner, in response to respondent’s arguments pursuant to Mental Hygiene Law § 10.05 (e), argues that the respondent did receive notice and that if respondent wished to contest receipt of said notice, he should have testified at the probable cause hearing. Petitioner further submitted to this court a copy of the Mental Hygiene Law § 10.05 (e) notice that was delivered to the respondent notifying him that his case was referred to a case review team for evaluation under article 10 of the Mental Hygiene Law. The notice states that the purpose of the referral is to determine whether or not respondent requires civil management upon his release from prison. The date of the notice is June 19, 2007. The notice states that it was delivered to the respondent on June 19, 2007 at 3:30 p.m. and it is signed by the deliverer, “Jack McDaniel.”
Since proof was submitted that the respondent received the Mental Hygiene Law § 10.05 (e) notice, respondent’s arguments with respect to this court’s jurisdiction and the statements made by respondent to the psychiatric examiner violating respondent’s due process rights are hereby deemed moot.
Respondent next argues that any hearsay statements contained in Dr. Lynch’s report should be stricken from evidence. At the probable cause hearing, respondent argued that all references made by Dr. Lynch to other documents were unreliable hearsay and they should be redacted. Specifically, respondent sought to redact all information taken from his Division of Criminal Justice Services (DCJS) criminal history report (rap sheet), parole reports or presentence reports. At the probable cause hearing, this court sustained the objection with respect to the DCJS criminal history report and reserved decision with respect to the parole reports and presentence reports in order to give the petitioner the opportunity to respond to respondent’s arguments in writing.
Petitioner opposes any such redaction and cites to the case of Hambsch v New York City Tr. Auth. (63 NY2d 723 [1984]). Petitioner argues that while “technically” the records are hearsay, New York evidentiary law allows for experts to rely on hearsay and other items not necessarily in evidence to form their opinions, as long as those materials are materials normally relied upon by experts in the relevant field. Petitioner argues that Dr. Lynch relied upon various and completely identified New York State institutionally kept records, including the *257 respondent’s criminal history and psychiatric records, in order to arrive at her professional opinion. Petitioner’s contention is that the only issue for this court to determine is whether those records can be recognized by the court as the kind of records accepted in the profession as reliable in forming a professional opinion.
Petitioner also cites to the case of Matter of Consilvio (8 AD3d 22 [1st Dept 2004]), a case which involved Mental Hygiene Law article 9. Petitioner argues that in that case, the court noted favorably that both clinical records and the respondent’s criminal history revealed relevant facts about his mental condition. In addition, petitioner cites to a book written by Dennis M. Doren, Ph.D., titled Evaluating Sex Offenders, A Manual for Civil Commitments and Beyond (Sage 2002), wherein Dr. Doren asserts that it is critical for the evaluator to consider numerous records, including records from the corrections department where the respondent may have been housed, and his criminal history, if obtainable. Therefore, petitioner asserts that Dr. Lynch properly considered the respondent’s psychiatric records and criminal history when she relied on those documents to help form her opinion.
Respondent argues in reply that the records quoted by Dr. Lynch in her report do not contain the type of independent indicia of reliability that is a necessary hallmark of an admissible business record. Respondent notes that Dr. Lynch quotes liberally from the presentence report and recounts statements made by the victims of respondent’s crimes as recounted to the presentence report investigator. Respondent contends that such statements are hearsay and inadmissible because the victims of the crimes were under no business duty to speak with investigators nor were their statements made under oath. Respondent argues that those victim statements are unreliable hearsay and should be stricken from Dr. Lynch’s report.
This court agrees with the respondent that the statements contained in the presentence and parole reports which Dr. Lynch reviewed in her evaluation of the respondent contain multiple layers of hearsay. The cases cited by respondent are persuasive. In People v Hoppe (12 AD3d 792, 793 [3d Dept 2004]), which involved a defendant’s assessment under the Sex Offender Registration Act, the court, referring to the presentence report and the reports of the psychiatric social worker, psychiatrist and probation officer, stated that, “much of the information from these reports constituted unreliable hearsay.”
*258 Petitioner asserts that the issue before this court is whether the subject records can be recognized by the court as ones that are of the kind accepted in the profession as reliable in forming a professional opinion. Although the presentence report and parole reports themselves may qualify as business records institutionally kept by the State of New York, the statements contained therein by the victims do not fall within that business record exception.
In Matter of Leon RR (48 NY2d 117, 122 [1979]), cited by the respondent, the court held that
“each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception . . . not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well” (citations omitted).
There is no indication that the victims were under a business duty to provide their account of the events to the presentence report interviewer or parole investigators.
Accordingly, the statements made by the victims which respondent requested the redaction of, specifically on pages four and five of Dr. Lynch’s report, are hereby redacted. Nevertheless, even with the redaction of those statements, there is more than enough information in Dr. Lynch’s report from her own examination of the respondent to support this court’s finding that there is probable cause to believe that the respondent is a sex offender requiring civil management.
Respondent’s request that this court not consider the actuarial test results obtained by Dr. Lynch in her examination of the respondent is denied. The petitioner did not respond to that branch of respondent’s argument. Dr. Lynch’s actuarial assessment of the respondent scored respondent in the “high risk” range for sexual recidivism. Respondent argues that Dr. Lynch’s report does not establish an adequate foundation for her test results. Respondent asserts that since Dr. Lynch does not explain what an actuarial test is, what it is designed to measure, how the test was developed, what the accuracy of it is or whether or not Dr. Lynch was qualified to perform them, the results should not be considered by this court.
Respondent’s arguments are without merit. Dr. Lynch identifies herself in her report as a licensed psychologist which, pur *259 suant to Mental Hygiene Law § 10.03 (j), qualifies her as a “[p]sychiatric examiner . . . who has been designated to examine a person pursuant to [article 10].” The respondent put forth no evidence before this court to contest Dr. Lynch’s qualifications to conduct the actuarial assessment of the respondent. Moreover, if respondent wished to cast doubt upon the reliability or accuracy of the actuarial test, he should have called an expert witness at the probable cause hearing to challenge Dr. Lynch’s findings. Therefore, respondent’s request that this court disregard the results of the actuarial assessment is denied.
Finally, respondent asks that this court interpret probable cause for purposes of Mental Hygiene Law article 10 as “more probable than not” as opposed to “reasonable cause to believe.” Respondent cites to criminal cases wherein courts defined probable cause to mean “more probable than not” and states that even though “probable cause” is often used to mean “reasonable cause,” “probable cause” in an article 10 case should be considered in a “practical light” which lends itself to a more “stringent” meaning than mere “reasonable cause.”
The petitioner opposes the respondent’s proposed standard of proof and requests that this court interpret “probable cause” to mean “reasonable cause to believe.” Petitioner cites to Matter of State of New York v Junco (16 Misc 3d 327, 329 n 1 [Sup Ct, Washington County 2007]), an article 10 case wherein the trial court defined “probable cause” as “reasonable cause to believe that the respondent is a sex offender requiring civil management.” In addition, petitioner refers to the meaning of probable cause as adopted by courts in the civil context and cites to malicious prosecution cases wherein courts have defined probable cause to mean “reasonable cause.” Petitioner argues that the criminal cases cited by the respondent are inapplicable herein because article 10 is a civil statute and this court should look to civil case law to determine the meaning of probable cause.
Article 10 does not define the meaning of probable cause. However, this court rejects respondent’s request that this court define “probable cause” to mean “more probable than not.” Respondent contends that the consequence of a probable cause determination under article 10 is a mandatory deprivation of liberty in a sex offender treatment facility for two months or more pending trial. In a criminal context, “reasonable cause” is often equated with “probable cause.” (People v Johnson, 66 NY2d 398 [1985].) Moreover, under Criminal Procedure Law § 140.10 (1) (b), a police officer may arrest a person for a crime “when he *260 has reasonable cause to believe that such person has committed such crime.”
Even though the courts in the criminal cases cited by respondent have defined probable cause to mean “more probable than not,” both the Criminal Procedure Law and other criminal case law equate probable cause with “reasonable cause to believe.” Article 10 is a civil statute and not a criminal one. At least one court in an article 10 matter has defined probable cause as “reasonable cause to believe.” Respondent has failed to provide this court with a persuasive reason why probable cause in the context of an article 10 matter should be defined as “more probable than not.”
Accordingly, interpreting “probable cause” as “reasonable cause,” this court finds that the petitioner herein has established that there is probable cause to believe that the respondent is a sex offender requiring civil management.