■ JENNIFER O'BRIEN, Respondent, v PAUL W. MBUGUA, Appellant. [853 NYS2d 392]—

Spain, J.

Plaintiff commenced this personal injury action seeking damages for injuries allegedly sustained during a 2002 automobile accident where defendant's vehicle struck plaintiff's vehicle from the rear. After a jury returned a verdict in plaintiff's favor and awarded damages, Supreme Court partially modified the damage award and then entered judgment.[1] Defendant appeals.

First, defendant contends that Supreme Court committed reversible error by permitting expert testimony as to the content of an MRI report prepared by a nontestifying health care professional. At trial, plaintiff offered the videotaped expert testimony of her treating specialist, neurologist Fabio Danisi. During his testimony, it was established that in the course of treating plaintiff, Danisi ordered certain tests, including an MRI. Over defendant's objection, Danisi was permitted to communicate the

---

1. Supreme Court's reduction of the jury's award for unreimbursed medical expenses is not at issue on this appeal.

results of the MRI—as reported by the radiologist who examined the actual films—and to explain the significance of those results in his diagnosis and treatment of plaintiff.

"It is well settled that hearsay testimony given by [an] expert . . . for the limited purpose of informing the jury of the basis of the expert's opinion and not for the truth of the matters related is admissible" (*People v Wlasiuk*, 32 AD3d 674, 680 [2006], *lv dismissed* 7 NY3d 871 [2006] [internal quotation marks and citations omitted]; *see People v Wright*, 266 AD2d 246, 247 [1999], *lv denied* 94 NY2d 831 [1999]). Here, however, Danisi clearly testified as to the contents of the MRI report, and it does not appear from the record either that Danisi personally viewed the MRI films or that the MRI films were entered into evidence.[2] Thus, we must decide whether a treating physician may testify to the content of a nontestifying radiologist's report on an MRI which was ordered by the treating physician.

"To be properly admitted, expert opinion evidence must generally be based upon facts either found in the record, personally known to the witness, derived from a 'professionally reliable' source or from a witness subject to cross-examination" (*Brown v County of Albany*, 271 AD2d 819, 820 [2000], *lv denied* 95 NY2d 767 [2000]; *see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]). We have previously held that the rule "that expert testimony must be based on material in evidence has largely been abandoned, and that such testimony is not rendered inadmissible because it is partly based upon the hearsay reports of others, provided that such data are of the type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject" (*Borden v Brady*, 92 AD2d 983, 983-984 [1983]; *see People v Sugden*, 35 NY2d 453, 460-461 [1974]). However, even if the reliability of the evidence is shown, it may not be the sole basis for the expert's opinion on an ultimate issue in the case, but rather "[it] may only form a link in the chain of data which led the expert to his or her opinion" (*People v Wlasiuk*, 32 AD3d at 681; *see Borden v Brady*, 92 AD2d at 984).

We conclude that where a treating physician orders an MRI— clearly a test routinely relied upon by neurologists in treating

---

2. Ordinarily, under best evidence and foundation rules, an expert witness is not permitted to offer testimony interpreting diagnostic films where, as here, the film at issue has not been offered into evidence (*see Schozer v William Penn Life Ins. Co. of N.Y.*, 84 NY2d 639, 646-647 [1994]; *Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]; Prince, Richardson on Evidence § 7-311, at 476 [Farrell 11th ed 1995]). Here, however, the objection was limited to the hearsay aspect of Danisi's testimony regarding the MRI results.

and diagnosing patients, like plaintiff, who are experiencing back pain—he or she should be permitted to testify how the results of that test bore on his or her diagnosis even where, as was apparently the case here, the results are contained in a report made by the nontestifying radiologist chosen by the treating physician to interpret and report based on the radiologist's assessment of the actual films. Significantly, this is not a case where the expert "essentially served as [a] conduit for the testimony of the report's author[ ]" by doing nothing more than "dictating the report's contents" and, thus, exceeded the bounds of permissible opinion testimony (*People v Wlasiuk*, 32 AD3d at 681). Instead, Danisi rendered an opinion based not only on the MRI results, but also his physical examinations of plaintiff—where he identified muscle spasms in her lower and middle back—and her other medical records. Under these circumstances, we hold that the MRI report, which was ordered by Danisi in the course of his treatment of plaintiff and is of the type of information which Danisi routinely relies upon in treating his patients, was " 'merely . . . a link in the chain of data' " which assisted Danisi in forming his opinion and, thus, the testimony was properly admitted (*Ciocca v Park*, 21 AD3d 671, 673 [2005], *affd* 5 NY3d 835 [2005], quoting *Bordon v Brady*, 92 AD2d at 984; *see Anderson v Dainack*, 39 AD3d 1065, 1067 [2007]; *cf. Murphy v Columbia Univ.*, 4 AD3d 200, 203 [2004]; *but see Wagman v Bradshaw*, 292 AD2d 84, 85-86 [2002]).

Turning to defendant's challenge to damage awards of past and future lost wages, we agree that the awards were against the weight of the evidence. The standard of review on a motion to set aside the verdict is " 'whether the evidence so preponderated in favor of the movant that the verdict could not have been reached on any fair interpretation of the evidence' " (*Zeigler v Wolfert's Roost Country Club*, 291 AD2d 609, 610 [2002], quoting *Hess v Dart*, 282 AD2d 810, 811 [2001] [citations omitted]; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). Moreover, "[i]t is axiomatic that loss of earnings must be established with reasonable certainty and the initial burden of proving lost wages is on [plaintiff]" (*Faas v State of New York*, 249 AD2d 731, 732-733 [1998] [citations omitted]; *see Petrilli v Federated Dept. Stores, Inc.*, 40 AD3d 1339, 1341 [2007]; *Tassone v Mid-Valley Oil Co.*, 5 AD3d 931, 932 [2004], *lv denied* 3 NY3d 608 [2004]).

Plaintiff was awarded $24,720 in past lost earnings and $59,904 in future lost earnings. She testified that, prior to the May 2002 accident, she worked part time (approximately 20 hours per week) as a dental assistant at "about [$13] an hour"

and part time (approximately 12 hours a week) at a bookstore earning a wage of $10 per hour. There is record evidence that, due to the accident, plaintiff was on complete bed rest for 12 weeks between the time of the accident and the birth of her son on August 16, 2002. She returned to work at the bookstore in September 2002, two weeks following the birth of her son, and began working a flexible schedule, including hours at home. It is impossible to calculate, from the evidence on this record, the number of hours of employment with the bookstore plaintiff may have missed after her return to work in September 2002. She further testified that she returned to work at the dental office in mid-October 2002. Again, her testimony is vague regarding the exact number of hours she worked, but it can be established with reasonable certainty that between October 20, 2002 and March 1, 2003—when plaintiff resumed work more or less at her preaccident level—her employment with the dental office was reduced by at least 50%. No evidence exists as to whether work missed by plaintiff between the birth of her son and her return to work at a reduced schedule was due to the birth or her injuries. Moreover, the record is devoid of any W-2 forms, tax returns or other documentation of income earned.

This evidence, even if plaintiff's testimony is fully credited, is insufficient to support the amount of damages awarded by the jury. With respect to her part-time employment at the bookstore, plaintiff established only that her injuries prevented her from working during the 12-week period between the accident and the birth of her son, for a total loss of $1,440. As to her employment at the dental office, plaintiff established lost wages for the same 12-week period and that her schedule was reduced by 50% during the 19-week period from October 20, 2002 to March 1, 2003. Her lost wages from the dental office total $5,590, for total lost past earnings of $7,030. Plaintiff did not prove to a reasonable certainty any amount of future lost earnings. Accordingly, the award for lost earnings should be reduced to $7,030 or a new trial ordered on these damages if plaintiff will not stipulate to that amount (see Beadleston v American Tissue Corp., 41 AD3d 1074, 1078 [2007]; Ordway v Columbia County Agric. Socy., 273 AD2d 635, 637 [2000]; Faas v State of New York, 249 AD2d at 732-733; Seargent v Berben, 235 AD2d 1024, 1025 [1997]; Toscarelli v Purdy, 217 AD2d 815, 818-819 [1995]).

Mercure, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the order and judgment are modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff $24,720 for loss of past income and $59,904 for loss of future income; new trial ordered on the issue of said damages unless, within 20

days after service of a copy of the order herein, plaintiff stipulates to reduce the verdict for loss of past income to $7,030 and for loss of future income to $0, in which event said order and judgment, as so modified, are affirmed.