OPINION OF THE COURT
Dineen A. Riviezzo, J.
Issue Presented
In a Mental Hygiene Law article 10 proceeding, to what extent can a psychiatrist rely on out-of-court materials, such as presentence reports and Department of Parole records, in compiling a history of sex offenses committed by the respondent, in order to formulate a psychiatric opinion as to whether the respondent has a “mental abnormality” as that term is defined in the statute?
Procedural and Factual Background
This proceeding under article 10 of the Mental Hygiene Law is being tried before me without a jury.
Respondent was convicted of attempted rape in the first degree of a 13-year-old victim on October 7, 2002 (the underlying offense). The commission of this offense is deemed established and may not now be relitigated (Mental Hygiene Law § 10.07 [c]), and all plea minutes, prior trial testimony, and records from this proceeding are admissible at trial (Mental Hygiene Law § 10.08 [g]). In addition to the underlying offense, however, respondent’s criminal history includes a number of additional convictions. The chart below sets forth some of respondent’s various convictions relevant to this proceeding, and a synopsis of the alleged facts of the underlying criminal conduct, as well as the documentary evidence the Attorney General’s expert used to substantiate the alleged underlying facts:[1]
*808 Conviction Date of Conviction Date of Offense
1. Rape in the third degree 9/4/92 9/9/91
Victim was 15 years old. Underlying facts supported by Criminal Court felony complaint sworn under oath by victim, grand jury indictment, presentence report and certificate of conviction (collectively court exhibit 2).
2. Rape and sodomy in the first degrees 8/27/80 6/30/79
Respondent engaged in forcible sexual intercourse with his 12-year-old daughter. Underlying facts supported by trial transcripts.
3. Impairing the morals of a minor 9/1/61 5/15/61
Respondent allegedly fondled the 11-year-old victim. Underlying facts supported by 1992 inmate status report (court exhibit 1) prepared by Division of Parole, and an unsigned 1967 presentence report (court exhibit 4) prepared in connection with a burglary conviction, containing a synopsis of the alleged underlying facts of the offense.
4. Attempted assault 5/3/61 4/5/61
Respondent allegedly fondled the eight-year-old victim. Underlying facts supported by 1992 inmate status report (court exhibit 1) prepared by Division of Parole, and an unsigned 1967 presentence report (court exhibit 4) prepared in connection with a burglary conviction, containing a synopsis of the alleged underlying facts of the offense.
Prior to trial, respondent had moved in limine to exclude from evidence, and to bar reliance on, certain hearsay evidence on which petitioner’s expert psychiatrist would allegedly rely in formulating an opinion. Because the matter was to be tried by the court without a jury, the court, with the concurrence of the parties, determined that those parts of the motion not resolved pretrial would be held in abeyance, and a ruling deferred on the evidentiary issues until after the witnesses had testified.
At trial, petitioner produced the testimony of Cynthia Asmus, a licensed social worker who compiled the documents setting forth respondent’s criminal history. Her testimony established that she collated the documents from various sources, and compiled a report used by Office of Mental Health colleagues in *809 these proceedings. The testimony of Dr. Harris, petitioner’s expert psychiatrist, established that he relied upon these same documents, as well as his interview with respondent, in formulating his expert opinion.
As is relevant to the instant case, petitioner’s expert testified that respondent suffers from pedophilia, paraphilia n.o.s. and antisocial personality disorder. However, that pedophilia diagnosis hinged on the evidence of sexual contact with prepubescent girls, and the only evidence of such misconduct is the two incidents occurring in 1961. Dr. Harris testified that he relied on court exhibits 1 and 4 (see above), as well as other documents (court exhibit 5).[2] The following two excerpts from the trial are instructive on this point:
“the court: What I wanted to know, Doctor, if you didn’t have the facts of those two offenses, two 1961 offenses, if that was not, for instance, contained in the documents that you had, would your conclusions as to Mr. A.’s three diagnoses, as well as the fact that he had a mental abnormality, be the same?
“the witness: He would still have a mental abnormality, Your Honor, no question about that. The question is would he [meet] criteria for pedophilia for prepubescent. Those girls were the only two that have been officially documented as to who he has offended against, those two girls under the age, not quite pubescent. So if I didn’t have those two girls, I would probably then just say that he had paraphilia NOS for girls 12 to 15 years old, clearly still meeting criteria for mental abnormality, still unable to control his impulses and his sexual deviant arousal.
“the court: What about the antisocial personality disorder, he would still—
“the witness: That’s independent of the age group that he’s offending against.” (Trial transcript at 110-111.)
Consequently, if the 1961 incidents were excluded from consideration, the diagnosis of pedophilia could not stand, and *810 the expert would instead classify the respondent as suffering from paraphilia n.o.s. and antisocial personality disorder. The Attorney General’s office argues that the documentary evidence is indeed sufficiently reliable for the expert to render a diagnosis. The respondent argues to the contrary that reliance on these documents is not reasonable, and cites People v Hoppe (12 AD3d 792 [2004] [presentence report contained “unreliable hearsay”]).
Evidentiary Guidelines under Article 10
The Sex Offender Management and Treatment Act (Mental Hygiene Law art 10) does not by its terms clarify to what extent hearsay may be employed at trial of a petition for civil management, either generally, or for the purpose of providing a basis for expert opinion. Mental Hygiene Law § 10.07 (c) provides that the “provisions of subdivision (g) of section 10.08 of this article and article forty-five of the civil practice law and rules shall be applicable to trials conducted pursuant to this section.”
CPLR article 45 (“Evidence”) contains the normal rules of evidence applicable in civil proceedings. The inclusion of article 45 as the evidentiary standard suggests that at an article 10 trial, as a civil trial generally, hearsay should not generally be admissible.
Mental Hygiene Law § 10.08 (g), on the other hand, contains some evidentiary rules specific to civil management proceedings. That section provides, inter alia:
“Any relevant written reports of psychiatric examiners shall be admissible, regardless of whether the author of the report is called to testify, so long as they are certified pursuant to subdivision (c) of rule forty-five hundred eighteen of the civil practice law and rules, in any proceeding or hearing held pursuant to subdivision (g) or (h) of section 10.06 of this article [relating to probable cause hearings], paragraph two of subdivision (a), or paragraph four of subdivision (d), or subdivision (e), (g) or (h) of section 10.11 of this article [relating to imposition of strict and intensive supervision]. In all other proceedings or hearings held pursuant to this article, such admissibility shall require a showing of the author’s unavailability to testify, or other good cause. All plea minutes and prior trial testimony from the underlying criminal proceeding, and records from previous proceedings under this article, shall be admissible.”
*811 Under Mental Hygiene Law § 10.08 (g), the examining psychiatrist’s report is admissible at the probable cause hearing or at proceedings relating to the imposition of strict and intensive supervision. At trial, the expert’s report is admissible only if the expert is unavailable, or if “good cause” is shown. No argument has been offered that “good cause” exists for introduction of the report. Since the same rules of evidence have been applied to expert reports as well as to “in court” testimony at trial,[3] the fact that the expert’s report (containing multiple layers of hearsay) may be admissible in evidence does not mean that every entry in the report is admissible, without redaction.
Other states with similar sex offender civil management acts have at times permitted experts to rely on “trustworthy” hearsay in establishing the respondent’s criminal history, so as to render a diagnosis. However, in many of those states hearsay is specifically permitted by statute, and thus those determinations are of limited guidance. (See e.g. Cal Welf & Inst Code § 6600 [a] [3] [“The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health”]; People v Otto, 26 Cal 4th 200, 26 P3d 1061 [2001].)
The Professional Reliability Exception, Generally
In Wagman v Bradshaw (292 AD2d 84, 87 [2d Dept 2002]), the Appellate Division summarized the four foundations for expert opinion:
“Although the issue currently pending before the Court does not concern the admissibility of expert testimony at trial, the same rules generally govern expert opinion evidence submitted by way of a report or an affidavit (see e.g., D’Esposito v Kepler, 14 AD3d 509 [2d Dept 2005] [expert’s report inadmissible where it was not submitted under oath and relied on information other than that upon which an expert may properly base an opinion]; see also, Gargiulo v Geiss, 40 AD3d 811 [2d Dept 2007]; Costa v 1648 Second Ave. Restaurant Inc., 221 AD2d 299 [1st Dept 1995] [expert’s affidavit inadmissible because its conclusions were dependent upon other inadmissible reports]; Gardner v Ethier, 173 AD2d 1002 [3d Dept 1991] [expert affidavit inadmissible because it was conclusory and speculative and the views it conveyed were based on hearsay statements from unspecified witnesses]).”
*812 “It is well settled that, to be admissible, opinion evidence must be based on one of the following: first, personal knowledge of the facts upon which the opinion rests; second, where the expert does not have personal knowledge of the facts upon which the opinion rests, the opinion may be based upon facts and material in evidence, real or testimonial; third, material not in evidence provided that the out-of-court material is derived from a witness subject to full cross-examination; and fourth, material not in evidence provided the out-of-court material is of the kind accepted in the profession as a basis in forming an opinion and the out-of-court material is accompanied by evidence establishing its reliability.”
Since the criminal history portions of the documents relied upon by the psychiatrist are not personally known, in evidence (see the discussion below concerning business records), or from a witness subject to cross-examination, it must be determined if the expert may rely on these entries under the last category set forth in Wagman — i.e., the professional reliability exception to the hearsay rule.
There are two prerequisites or “prongs” to the application of the professional reliability exception. In order for an expert to rely on hearsay materials, the proponent of the evidence must adduce (1) testimony establishing that the hearsay evidence is accepted in the profession as a basis in forming an opinion (which may come from the expert witness), and (2) proof of reliability. Here, the first prong is not at issue, as the expert witness testified that these types of documents are accepted in the profession as reliable, and respondent has not challenged this testimony or its ramifications. The issue here is the second prong of the professional reliability exception — the issue of the reliability of the hearsay data upon which the expert relied in formulating his opinion.
A number of cases have previously considered the issue of reliability, and provide guidance in this area. For example, in Hambsch v New York City Tr. Auth. (63 NY2d 723, 726 [1984]), the professional reliability exception was found not to apply in a “No-Fault Law” serious injury case. Plaintiffs physician had testified that plaintiff had spondylolisthesis, which was allegedly caused by a fracture. The basis for this medical opinion was a discussion the physician had engaged in two days prior to the trial with a radiologist, who held that opinion because of an *813 unidentified medical study. As there was no evidence of the reliability of this tenuous statement, the testifying physician’s conclusions were held to be inadmissible.
Similarly, in Wagman v Bradshaw (supra, 292 AD2d 84 [2002]), the Court found reversible error in permitting plaintiff s treating chiropractor to testify as to the results of an MRI report which was not in evidence. The Court found that there was insufficient proof of the reliability of the MRI report:
“In the case at bar, there was no proof presented to establish that the written MRI report contained reliable data. It is significant that the plaintiffs treating chiropractor never saw the actual MRI films. There was simply no evidence regarding the healthcare professional who prepared the MRI report, or when and under what circumstances it was prepared. Additionally, there was no evidence that the written MRI report offered a detailed interpretation of the several images displayed in the MRI films, or whether the report merely stated a conclusion as to the condition or conditions purportedly revealed by the films. Furthermore, the treating chiropractor’s testimony was equivocal as to whether he used the written MRI report merely to confirm an already established diagnosis or whether he relied upon it to form his diagnosis .... Accordingly, this particular written MRI report was not shown to be sufficiently reliable to permit the witness to rely upon it as out-of-court material ‘of a kind accepted in the profession as reliable in forming a professional opinion.’ ” (292 AD2d at 89-90 [citations omitted].)
The Professional Reliability Exception — Complete Reliance on Hearsay in Formulating an Opinion
Even if the reliability of the hearsay evidence is established, the hearsay evidence may not form the sole basis for the expert’s opinion on an ultimate issue in the case. Rather, the hearsay evidence “may only form a link in the chain of data which led the expert to his or her opinion” (People v Wlasiuk, 32 AD3d 674, 681 [3d Dept 2006], lv dismissed 7 NY3d 871 [2006] [expert repeatedly testified that defendant’s account of the accident was inconsistent with a published submerged motor vehicle accident report, and intimated that the report was the definitive authority on submerged vehicle accidents. Rather than testifying that the report — as well as facts adduced at trial and his own experience as an accident reconstructionist — formed the basis for his *814 opinion, the expert essentially served as conduit for the testimony of the report’s authors by dictating the report’s contents, and then offered his opinion that, to the extent that defendant’s story was contrary to the report, it was an impossibility]; Borden v Brady, 92 AD2d 983 [3d Dept 1983] [report constituted an expression of opinion on the crucial issue of the permanency of plaintiffs injuries and formed the principal basis for the expert witness’ opinion on the same issue, not merely a link in the chain of data upon which that witness relied]).
Recently, in O’Brien v Mbugua (49 AD3d 937 [3d Dept 2008]), the Third Department held that when a treating physician orders an MRI for a plaintiff experiencing back pain, the treating expert should be permitted to testify as to the manner in which the results of that test bore on his or her diagnosis, even where the results are contained in a report made by a nontestifying radiologist.[4] The O’Brien Court reasoned that such testimony was permissible where the treating physician’s opinion was based on the whole plethora of his or her observations of the plaintiffs conditions, complaints and responses to treatment, and not solely on the conclusions of another expert:
“We conclude that where a treating physician orders an MRI — clearly a test routinely relied upon by neurologists in treating and diagnosing patients, like plaintiff, who are experiencing back pain-he or she should be permitted to testify how the results of that test bore on his or her diagnosis even where, as was apparently the case here, the results are contained in a report made by the nontestifying radiologist chosen by the treating physician to interpret and report based on the radiologist’s assessment of the actual films. Significantly, this is not a case where the expert ‘essentially served as [a] conduit for the testimony of the report’s author[ ]’ by doing nothing more than ‘dictating the report’s contents’ and, thus, exceeded the bounds of permissible opinion testimony (People v Wlasiuk, 32 AD3d at 681). Instead, Danisi rendered an opinion based not only on the MRI results, but also his physical examinations of plaintiff — where he identified muscle spasms in her lower and middle back — and her other medical records. Under these circum *815 stances, we hold that the MRI report, which was ordered by Danisi in the course of his treatment of plaintiff and is of the type of information which Danisi routinely relies upon in treating his patients, was ‘ “merely ... a link in the chain of data” ’ which assisted Danisi in forming his opinion and, thus, the testimony was properly admitted (Ciocca v Park, 21 AD3d 671, 673 [2005], affd 5 NY3d 835 [2005], quoting Borden v Brady, 92 AD2d at 984; see Anderson v Dainack, 39 AD3d 1065, 1067 [2007]; cf. Murphy v Columbia Univ., 4 AD3d 200, 203 [2004]; but see Wagman v Bradshaw, 292 AD2d 84, 85-86 [2002]).” (49 AD3d at 938-939.)
The reasoning expressed in Matter of Daniel A. (7 Misc 3d 1025[A], 2005 NY Slip Op 50740[U] [Sup Ct, Franklin County 2005, Feldstein, J.]) is particularly apt with respect to the present inquiry. Petitioner in that case sought an involuntary retention order under article 15 of the Mental Hygiene Law. Dr. Niederbuhl, a psychologist, was asked to give his opinion on the question of whether respondent suffered from a developmental disability which had its onset prior to age 22. Essentially, the entire factual predicate for the psychologist’s testimony was a conversation he had prior to the hearing with the respondent’s aunt, who was not called as a witness. In determining that the opinion was improperly based on this hearsay evidence, the court held (2005 NY Slip Op 50740[U], *3-4):
“The difficulty presented in the instant case is even more acute than the circumstance obtaining in Borden. Not only did the hearsay material here form the ‘principal basis’ for Dr. Niederbuhl’s opinion, and not only was it secured to reinforce an opinion in an imminent trial rather than to enable treatment, it also lacks critical indicia of reliability in itself. The out-of-court source, Ms. Twilley, provided information (a medical diagnosis of spinal meningitis) which must be assumed to have been the product of further hearsay: no claim was ever made that Ms. Twilley has any medical expertise or qualifies as an expert herself. The reliability of out-of-court material which would be excluded were its source a medical expert is certainly not enhanced by the fact that the source of the hearsay is not. Furthermore, as brought forth on voir dire of Dr. Niederbuhl, Ms. Twilley was not herself a person wholly disinterested in the outcome of this proceeding: she was *816 frightened or intimidated by both Mr. A and his ‘friends,’ and on the basis of her own welfare was arguably concerned that he not be released from care.”
The Use of Presentence Reports under Article 10 and under Other Circumstances
This court has found only one case decided under Mental Hygiene Law article 10 which discusses the professional reliability exception. In that case, Justice Hunter held that victims’ statements contained in presentence and parole reports are unreliable. (State of New York v Dove, 18 Misc 3d 254 [Sup Ct, Bronx County 2007, Hunter, J.].)
Respondent cites and relies upon People v Hoppe (12 AD3d 792 [3d Dept 2004]) in which presentence and other reports indicating that a defendant was abusive and/or violent toward family members “constituted unreliable hearsay” under the Sex Offender Registration Act (SORA) (Correction Law art 6-C). In SORA hearings, the People have the burden of establishing the defendant’s risk level assessment by clear and convincing evidence, and may do so by submitting “reliable hearsay” (see People v Dominie, 42 AD3d 589, 590 [2007]; People v Arotin, 19 AD3d 845, 847 [2005]). Most recently the Third Department held that reliable hearsay may include “the case summary and the presentence investigation report.” (People v Hazen, 47 AD3d 1091, 1092 [3d Dept 2008]; see also People v Cruz, 28 AD3d 819, 819 [3d Dept 2006]; People v Lewis, 45 AD3d 1381 [4th Dept 2007], lv denied 10 NY3d 703 [2008].)
Contrary to the contention that presentence reports are generally unreliable in the SORA context, and despite the ruling in Hoppe, the cases cited above indicate that presentence reports are in fact routinely relied upon in SORA proceedings. In SORA proceedings, unlike article 10, the statutory scheme specifically allows for consideration of “reliable hearsay.” Presentence reports are considered to constitute reliable hearsay in SORA proceedings because they are prepared in satisfaction of a statutory obligation, strictly regulated as to form and content, signed by a known author, and subject to challenge by the defendant. (See CPL 390.20, 390.30.) To some degree, the same considerations apply here, and in a proper case an expert psychiatrist should be able to rely on the contents of a presentence report. As demonstrated in People v Hoppe (supra), there must, however, be sufficient indicia of reliability with respect to the particular data contained in the report.
*817 Applying the Professional Reliability Exception under the Present Circumstances
This court concludes that presentence and parole reports may be reliable depending on the particular facts presented. For example, when the respondent pleads guilty to a crime specifically constituting a sexual offense, the fact of the conviction itself suggests that the victim’s statements describing the underlying events (even if they exceed that conduct which the respondent admitted to during a plea allocution) are reliable. In the present case, the court has no difficulty in finding that the records containing a description of the underlying events concerning the 1992 conviction for rape in the third degree are reliable. (See court exhibit 2.) The underlying facts in the presentence report prepared for the 1992 conviction are consistent with the statements in a sworn Criminal Court felony complaint, as well as the grand jury indictment (presumably supported by sworn testimony).[5] Given the fact that respondent pleaded guilty to rape, the statements made by the victim are corroborated by respondent’s own admission of guilt. The nature of the crime is not in doubt, and the records are clearly sufficiently trustworthy so as to constitute a reasonably reliable basis for the expert opinion. Similarly, the underlying facts of the 1980 rape and sodomy convictions are supported by a trial transcript, and in view of the jury’s conclusions, there is no difficulty in permitting the expert to base his conclusions on this documentary evidence.
This court cannot find, however, that the 1992 inmate status report prepared by the Department of Correctional Services and the unsigned 1967 presentence investigation report prepared by the Probation Department, or the other documents submitted,[6] can be used to substantiate the facts underlying the 1961 crimes committed some 30 years and 6 years earlier, respectively.
It is not the length of time alone which transpired between the commission of the 1961 offenses and the creation of the documents purporting to establish the underlying factual predi *818 cate for the offenses which casts doubt on their reliability. In addition, numerous discrepancies between the documents, the rap sheets, and the certificates of conviction call their accuracy into question. Initially, it is noted that respondent’s “rap sheet” (petitioner’s exhibit 8 in evidence) states that respondent was arrested on April 5, 1961 and again on May 15, 1961 for a violation of “PL 483-a.” In 1961, Penal Law former § 483-a, carnal abuse of a child, applied to “indecent or immoral practices” with a child of the age of 10 years or under — a charge which could apply to the April 5, 1961 offense, but not the May 15, 1961 offense, where it was alleged the victim was 11 years old. The certificate of conviction (petitioner’s exhibit 12 in evidence) indicates that with respect to the May 15, 1961 offense, respondent was convicted of “imp[airing] morals [of a minor].” This entry is inconsistent with respondent’s “rap sheet” which indicates that the respondent was convicted of a violation of Penal Law former § 483-a — an offense, as noted above, which did not apply when the victim was 11 years of age. It must also be noted that the conviction of “impairing the morals of a minor,” ostensibly in violation of Penal Law former § 483 (2) (see People v Price, 33 Misc 2d 476 [Ct Spec Sess, Kings County 1962]), is technically the offense of “endangering life or health of child.” It should be noted that this section of the Penal Law did not by its terms require any finding of sexual contact or activity, but only conduct by which the child’s “morals [are] likely to be impaired.” (Penal Law former § 483 [2].)
Similarly, as to the April 5, 1961 offense, the certificate of conviction indicates that respondent pleaded guilty to attempted assault, which again, has not been shown to require a finding of sexual misconduct. In addition, with respect to the May 15, 1961 offense, the 1967 presentence report indicates that the date of conviction for impairing the morals of a minor was September 25, 1961, whereas the certificate of conviction indicates that the date of disposition was August 18 and the date of sentencing was September 1.
The 1961 convictions by their nature are not sex offenses. Petitioner’s expert admitted at trial that he could not “impugn” any sexual activity from the fact of the convictions alone. No proof was adduced of a signed complaint, plea minutes, or even a criminal complaint to substantiate the alleged underlying facts. Nor was any evidence submitted to establish that the original court records were examined in connection with the preparation of these reports. This court would have possibly *819 been able to find or infer, had the presentence report been prepared in connection with sentencing proceedings for the same underlying offense, that the probation department examined original records and sworn statements in compiling the data. Here, no such finding or inference is possible.
In addition, the court is mindful that in 1967, when the presentence report (court exhibit 4) was prepared in connection with a burglary offense not at issue here, respondent had no right to examine the presentence report prior to sentencing, and thus no opportunity to challenge the accuracy of the alleged facts contained in that report as to the 1961 offenses. (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 390.50, at 358 [“Prior to 1975 the pre-sentence report was completely confidential and neither the defense nor the prosecution had an opportunity to review it”]; People v Washington, 93 Misc 2d 164 [Crim Ct, NY County 1978].)
The fact that the 1992 inmate status report contains two synopses similar to those contained in the 1967 presentence report does not make either document more trustworthy. The 1992 inmate status report appears simply to be restating the data contained in the unsigned 1967 report. The mere repetition of the same statements does not make them more reliable.
These unsubstantiated statements of unknown origin cannot form the basis of an expert’s conclusion. Respondent stated to the psychiatrist that he had nothing to say with regard to one of the 1961 convictions, and denied any sexual contact as to the other offense. Thus the statements remained uncorroborated. Of particular concern is the fact that the entire diagnosis of pedophilia depends upon these unsubstantiated reports. As the psychiatrist admitted, without these reports, there is no basis for a finding of sexual conduct toward prepubescent girls, and thus no basis for the finding of pedophilia. As in Borden and its progeny, the entire diagnosis of pedophilia is based upon unreliable hearsay evidence. The unreliable hearsay evidence is not merely “a link in a chain of data” supporting a diagnosis of pedophilia, but the entire foundation for such testimony.
The Business Record Exception
Lastly, this court notes that if the entries in the parole or presentence reports were themselves admissible in evidence, then the expert’s conclusions could properly be based on such reports. The reports do not, however, constitute business records for these purposes.
CPLR 4518 (a) sets forth the business records exception to the hearsay rule, and provides:
*820 “Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
In addition, CPLR 4518 (c) relates to governmental records, and provides, as is here relevant:
“(c) Other records. All records, writings and other things referred to in sections 2306 and 2307 [‘Books, papers and other things of a library, department or bureau of a municipal corporation or of. the state’] are admissible in evidence under this rule and are prima facie evidence of the facts contained, provided they bear a certification or authentication by the . . . department or bureau of a municipal corporation or of the state, or by an employee delegated for that purpose . . . .”
CPLR 4518 (c) dispenses with the need for an authenticating witness when certain governmental records and writings are introduced into evidence. However, it must be observed that “[a]dmissibility under CPLR 4518 (subd [c]) is governed by the same standards as the general business record exception of CPLR 4518 (subd [a]).” (Liberto v Worcester Mut. Ins. Co., 87 AD2d 477, 479 [2d Dept 1982], appeal dismissed 57 NY2d 955 [1982].)
Certainly, probation and parole reports may constitute business records. (State of New York v Dove, 18 Misc 3d at 258 [“Although the presentence report and parole reports themselves may qualify as business records institutionally kept by the State of New York, the statements contained therein by the victims do not fall within that business record exception”].) However, the fact that the reports are business records does not end the inquiry, as each entry must also be admissible as a business record. For every entry, the proponent of the record must demonstrate that it was within the scope of the entrant’s business duty to record the act, transaction or occurrence sought to be admitted, and in addition, each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or *821 the declaration must meet the test of some other hearsay exception, such as an admission against interest. (<Johnson v Lutz, 253 NY 124 [1930].) It must be borne in mind that if the source of the description of the respondent’s criminal conduct was the victim of the crime, there would be no business duty to report the crime, and those entries purporting to set forth the underlying facts of the crime are not admissible as business records, absent some other evidentiary exception.
The fallacy in admitting an entire file as a business record is amply illustrated by the decision in Matter of Leon R.R (48 NY2d 117 [1979]), a child neglect proceeding in which the agency’s entire case file was entered into evidence. The Court held (at 123):
“In this case, petitioner was under a statutory duty to maintain a comprehensive case record for Leon containing reports of any transactions or occurrences relevant to his welfare (Social Services Law, § 372; 18 NYCRR 441.7 [a]), thus satisfying this aspect of the business records test (see Kelly v Wasserman, 5 NY2d 425, 429). Some of the entries in the case file were based on firsthand observations of Leon’s caseworker which were recorded shortly after the occurrences, rendering them admissible. Many of the remaining entries, however, consisted of statements, reports and even rumors made by persons under no business duty to report to petitioner. Especially in the context of this case, it is essential to emphasize that the mere fact that the recording of third-party statements by the caseworker might be routine, imports no guarantee of the truth, or even reliability, of those statements. To construe these statements as admissible simply because the caseworker is under a business duty to record would be to open the floodgates for the introduction of random, irresponsible material beyond the reach of the usual tests for accuracy — cross-examination and impeachment of the declarant. Unless some other hearsay exception is available (Toll v State of New York, supra), admission may only be granted where it is demonstrated that the informant has personal knowledge of the act, event or condition and he is under a business duty to report it to the entrant 0Johnson v Lutz, supra; cf. Model Code of Evidence, rule 514).”
The source of the entries in the disputed documents is unknown, which precludes a finding that the entries are business *822 records. (See Noakes v Rosa, 54 AD3d 317 [2d Dept 2008] [statement in police report that defendant was “rear ended,” from unknown source, was improperly admitted under business record exception as it could not be established that source had a business duty to report].)
Lastly, the record must have been made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter, thereby assuring that the recollection is fairly accurate and the entries routinely made. Here, the records were made some 6 years or 30 years after the events surrounding the 1961 convictions, which is clearly not a reasonable time after the occurrence. The element of contemporaneity has been found lacking when the record is created a matter of months after an event. (Standard Textile Co. v National Equip. Rental, 80 AD2d 911 [2d Dept 1981].)
Conclusion
The documents relied upon to establish the facts underlying the 1980 and 1992 convictions were properly relied upon by the expert, who stated that it was accepted practice to rely on such documents, in view of their reliability. The documents relied upon to establish the facts of the 1961 convictions were not reliable, and the expert’s conclusion based on those documents (i.e., that respondent suffers from pedophilia) is disregarded by the court and excluded from the evidence in this case.

. The Attorney General’s office also introduced respondent’s “rap sheet” as well as certificates of conviction for each of the four listed offenses.

. Court exhibit 5 consists of (1) a Department of Correctional Services document dated September 25, 1992 entitled “Sensitive Case — Transfer Request Summary,” which states that “in 1961 at age 26 [respondent] was arrested] for PL 483-A which resulted in a conv. of Att. Assault .... In 1961 he was conv. [o]f PL 483-A & received an 8 mos. jail term”; and (2) a Department of Correctional Services document dated October 11, 1983 entitled “Program and Security Assessment Summary” which states, “His previous arrest record lists him as impairing the morals of minor girls (ages 8 & 11).”

. As stated in Matter of Kyanna T (19 Misc 3d 1114[A], 2007 NY Slip Op 52547[U], *6 n 3 [Fam Ct, Kings County 2007, Olshansky, J.]),

. To the extent that the particular application of the professional reliability exception to MRI reports in O’Brien may conflict with the holding in Wagman, that conflict does not affect the conclusions in this case.

. An indictment establishes that there was reasonable cause to believe that the defendant committed the crime. (People v Swamp, 84 NY2d 725 [1995]; People v Calbud, Inc., 49 NY2d 389 [1980].) Although not submitted here, grand jury minutes constitute “reliable hearsay evidence” under SOBA (Correction Law § 168-n [3]; People v Howard, 52 AD3d 273, 274 [1st Dept 2008]).

. See court exhibit 3, a Sandoval hearing from respondent’s 1980 rape and sodomy convictions, which, in a cursory manner, refers to the 1961 convictions without any discussion of the underlying facts.