■ In the Matter of SEAN GREENE, Respondent, v KIMBERLY ROBARGE, Appellant. REGINALD H. BEDELL, as Attorney for the Children, Appellant. (And Three Other Related Proceedings.) [962 NYS2d 470]—

Peters, P.J. Appeals from an order of the Family Court of Essex County (Meyer, J.), entered August 8, 2011, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for modification of a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of two sons (born in 2001 and 2003). Pursuant to a February 2009 order entered on consent, the parties shared joint legal custody of the children with primary physical custody to the mother and scheduled parenting time to the father. After the mother was found to have violated the order by impeding the father's parenting time, the father commenced the first of these proceedings seeking sole legal and physical custody. Thereafter, a family health assessment of the parties was prepared, which prompted the attorney for the children to commence the second of these proceedings seeking a temporary order of protection requesting, among other things, that the mother "immediately cease her alienating practices and begin to actively foster the children's relationship with their father." Family Court partially granted that application and issued various orders, one of which directed immediate counseling for the children.

A fact-finding hearing was subsequently conducted over the course of more than 10 days, which included the testimony of the parties, two experts and several other witnesses. During the course of the proceedings, the parties filed various petitions charging each other with violating a temporary order that was then in effect pertaining to, among other things, their parenting time and involvement with the children's school activities. At the conclusion of the fact-finding hearing and following a *Lincoln* hearing, Family Court awarded sole custody to the father, established a visitation schedule for the mother and dismissed the remaining pending petitions. These appeals ensued.

Initially, both the mother and the attorney for the children contend that the opinion testimony of Elizabeth Schockmel, the court-appointed forensic psychologist, should have been stricken because her opinion was based in part upon information she obtained from Department of Social Services caseworkers who were not subject to cross-examination. We disagree. "[T]he professional reliability exception to the hearsay rule . . . enables an expert witness to provide opinion evidence based on otherwise inadmissible hearsay, provided it is demonstrated to be the type of material commonly relied on in the profession" (*Hinlicky v Dreyfuss*, 6 NY3d 636, 648 [2006]; *see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]; *O'Brien v Mbugua*, 49 AD3d 937, 938 [2008]). Here, Schockmel testified—without contradiction—that information obtained from collateral sources is commonly relied upon within her profession when conducting a forensic psychological evaluation in the context of a custody proceeding (*see People v Goldstein*, 6 NY3d

119, 124-125 [2005], *cert denied* 547 US 1159 [2006]; *Matter of State of New York v Motzer*, 79 AD3d 1687, 1688 [2010]; *compare Matter of Anthony WW. [Michael WW.]*, 86 AD3d 654, 656-657 [2011], *lv denied* 17 NY3d 897 [2011]; *Matter of Murphy v Woods*, 63 AD3d 1526, 1527 [2009]). Moreover, her opinion was principally based upon information she obtained from her extensive interviews with the mother, father and children, with the collateral source information serving as but "a link in the chain of data" that assisted her in forming her opinion (*Borden v Brady*, 92 AD2d 983, 984 [1983]; *see O'Brien v Mbugua*, 49 AD3d at 939; *Anderson v Dainack*, 39 AD3d 1065, 1067 [2007]). Accordingly, Schockmel's expert opinion testimony was properly admitted.

Turning to the merits, we find a sound and substantial basis for Family Court's award of sole custody to the father. An existing custody arrangement may be modified upon a showing of a change in circumstances reflecting a real need for change in order to insure the continued best interests of the child (*see Matter of Roefs v Roefs*, 101 AD3d 1185, 1185 [2012]; *Matter of Michael GG. v Melissa HH.*, 97 AD3d 993, 994 [2012]). Here, the evidence overwhelmingly established that the mother and father were no longer able to cooperate and effectively communicate with one another for the sake of their children. Their relationship had deteriorated to a point where they were antagonistic, embattled and unable to deal with one another in a civil fashion for even brief periods of time, thus rendering joint custody unworkable (*see Matter of Mahoney v Regan*, 100 AD3d 1237, 1237-1238 [2012], *lv denied* 20 NY3d 859 [2013]; *Hughes v Gallup-Hughes*, 90 AD3d 1087, 1089 [2011]; *Matter of Spiewak v Ackerman*, 88 AD3d 1191, 1192 [2011]).

Having determined that joint custody was no longer feasible, Family Court was then required to determine what custodial arrangement would promote the best interests of the children (*see Matter of Melody M. v Robert M.*, 103 AD3d 932, 933 [2013]; *Williams v Williams*, 78 AD3d 1256, 1257 [2010]). While a best interests assessment must be based on the totality of the circumstances after considering a number of factors (*see Eschbach v Eschbach*, 56 NY2d 167, 174 [1982]; *Matter of Yishak v Ashera*, 68 AD3d 1282, 1283 [2009]), "[e]vidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the [children] is so inconsistent with the best interests of the [children] as to, per se, raise a strong probability that [the offending party] is unfit to act as custodial parent" (*Matter of Dobies v Brefka*, 83 AD3d 1148, 1151 [2011], quoting *Matter of Youngok Lim v Sangbom Lyi*, 299 AD2d 763,

764 [2002] [internal quotation marks and citations omitted]; *see Posporelis v Posporelis*, 41 AD3d 986, 990 [2007]; *Matter of Turner v Turner*, 260 AD2d 953, 954 [1999]). We accord great deference to Family Court's factual findings, given its advantageous position to evaluate conflicting testimony and assess the credibility of witnesses (*see Hughes v Gallup-Hughes*, 90 AD3d at 1089; *Matter of Jeker v Weiss*, 77 AD3d 1069, 1070 [2010]).

Family Court's conclusion that the mother engaged in conduct designed to undermine and interfere with the children's relationship with the father is amply supported in the record. The father testified that it appears as if the mother had trained the children to ignore him, explaining that the children would not respond or even look at him when they were in the mother's presence. Testimony from a number of witnesses established that the oldest son excelled at baseball and was enthusiastic about the sport, and that the father supported the child's interest and helped coach the team. Yet, the mother went to great lengths to discourage, and even sabotage, the child's participation in an obvious effort to undermine the child's relationship with his father through that sport. She also repeatedly discouraged and caused the children to fear engaging in otherwise enjoyable activities with the father during his parenting time. For example, during a week-long vacation with the father, the children were excited to play in the "bouncy tent," but after speaking with the mother on the phone, the younger child refused to go because "mommy said that my heart could stop." During that same week, one of the boys would no longer swim in the pool after he was told by the mother that the chlorine might cause him to stop breathing.

The mother also engaged in actions that operated to vilify the father and alienate him from his children. There was evidence that the younger child was overheard by his teacher telling his friend that his father was a "bad person" because he moved out of the family home, a perspective which the mother emphasized during the hearing. Testimony also revealed that the mother instructed the children to rip up notes that they received from the father, stating that they "don't have room for them over at their apartment." On one occasion just after the father arrived to pick up the children, the mother proceeded to hang a "Stop Domestic Violence" sign on her residence with the assistance of the children. When asked by the father if they knew what domestic violence was, the children confirmed that they did and stated that he had done so to the mother in the past. Based upon her interviews with the parties, Schockmel testified that the children appeared to have memories of the father that were

programmed and manipulated by the mother and had been "brainwashed" to think that their father was mean. She explained that the mother indoctrinated the children with the belief that the father's departure from the relationship constituted an abandonment of them and caused the children to feel that any affection for the father constituted a rejection of her. Notably, Schockmel expressed concern that the intensity of the mother's behavior had not waned in the 2¹/₂ years since the parties' separation and, as a result, opined that her "window of adjustment and recovery . . . is closed."

Although the father's behavior was troubling at times, Family Court found that, unlike the mother, he manifested a markedly greater ability to isolate his disputes with the mother without involving or impacting the children. Thus, while it is apparent that the mother loves her children and is capable of meeting their physical needs, it is equally clear that she is unwilling or unable to enable her children to foster a relationship with their father and remains unaware that her conduct is negatively impacting the children's emotional well-being. Under the circumstances, Family Court properly determined that a change in custody was in the children's best interests (see *Matter of Mahoney v Regan*, 100 AD3d at 1237-1238; *Jeannemarie O. v Richard P.*, 94 AD3d 1346, 1348 [2012]; *Matter of Anthony MM. v Jacquelyn NN.*, 91 AD3d 1036, 1038 [2012]; *Matter of Dobies v Brefka*, 83 AD3d at 1151).

Spain, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.