■ In the Matter of ANTHONY WW. and Others, Alleged to be the Children of a Mentally Ill Parent. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHAEL WW., Appellant. (And Another Related Proceeding.) [927 NYS2d 407]—

Kavanagh, J.

Respondent and Karen WW. (hereinafter the mother) are married and have three children, Anthony WW., Mary WW. and Madison WW. (born in 1999, 2001 and 2003, respectively). In 2002, Family Court found that the mother had neglected two of the children and an order of supervision was entered against both her and respondent. In 2003, all three children were placed

with petitioner after Anthony was found wandering in a nearby park and the mother admitted that she had left the boy alone outside the house unsupervised. The children remained in petitioner's care for almost two years before they were returned to respondent and the mother. In October 2005, Anthony again wandered away from home unsupervised, and was on his own for several hours without either respondent or the mother reporting that he was missing. Once again, the children were removed from the home and both parents were found to have violated the order of supervision. After respondent and the mother apparently admitted that they had permanently neglected the children, a finding of permanent neglect was entered against them and a judgment to that effect was entered but suspended for one year.

In January 2008, during the period of suspension, petitioner commenced this proceeding seeking to terminate respondent's parental rights, not because he had violated any of the terms of the suspension, but because he allegedly suffers from a mental illness that prevents him from providing proper care for the children.[1] One month later, while the termination proceeding was pending, petitioner filed a petition seeking an extension of the suspended judgment. A trial was subsequently conducted and Family Court ultimately terminated respondent's parental rights on the ground that he suffered from a mental illness that prevented him from providing proper care for his children (*see* Social Services Law § 384-b).[2] Respondent now appeals.

"Parental rights may be terminated if it is established by clear and convincing evidence that [the] respondent is 'presently and for the foreseeable future unable, by reason of mental illness . . . to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the date on which the petition is filed in the court' " (*Matter of Evelyn B.*, 37 AD3d 991, 992 [2007], quoting Social Services Law § 384-b [4] [c]; *accord Matter of Karen GG. [Marline HH.]*, 72 AD3d 1156, 1157-1158 [2010], *lv denied* 14 NY3d 713 [2010]; *Matter of Casey L. [Joseph L.]*, 68 AD3d 1497, 1498-1499 [2009]).[3] "Termination of parental rights on this basis requires proof not only of the parent's

---

1. Petitioner also commenced a termination proceeding against the mother on the same grounds (*Matter of Anthony WW. [Karen WW.]*, 86 AD3d 662 [2011] [decided herewith]).

2. When it rendered this finding, Family Court dismissed, as moot, the petition seeking an extension of the suspended judgment.

3. Mental illness is defined as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed

underlying condition, but must include 'testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child' " (*Matter of Arielle Y.*, 61 AD3d 1061, 1062 [2009], quoting *Matter of Robert XX.*, 290 AD2d 753, 754 [2002]; *see Matter of Karen GG. [Marline HH.]*, 72 AD3d at 1158).

To that end, petitioner presented the testimony and reports of Richard Liotta and Donald Danser, both of whom are licensed psychologists who examined respondent—Liotta by order of Family Court and Danser per petitioner's request. Respondent contends that both psychologists relied on inadmissible hearsay in preparing their reports and in arriving at their final opinions, and that since Family Court's decision terminating his parental rights was based in large measure on their reports and trial testimony, it must be reversed.

Specifically, respondent argues that both psychologists, in their reports and in their trial testimony, made reference to statements about respondent attributed to other witnesses who did not testify at trial, none of which was admitted into evidence or was otherwise qualified for admission pursuant to a recognized exception to the rule against hearsay. To the contrary, petitioner contends that both opinions were properly admitted and were either "based on facts in the record or personally known to the witness" (*Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725 [1984] [internal quotation marks and citation omitted]) or qualified as material " 'of a kind accepted in the profession as reliable in forming a professional opinion' " (*id.* at 726, quoting *People v Sugden*, 35 NY2d 453, 460 [1974]; *accord Matter of Murphy v Woods*, 63 AD3d 1526, 1526 [2009]), and, as such, were properly admitted at trial.

In that regard, Danser testified that, in forming his opinion, he relied on his interview with respondent, as well as the results of various psychological tests that he performed on him. Danser also reviewed records that petitioner had on file regarding respondent, including case, progress and supervision notes, all of which were compiled during a four-year period beginning in 2003,[4] as well as documents describing mental health treatment that respondent received during this time period.

While Danser did not testify that this evidence was commonly relied upon in his profession to perform such an evaluation,

---

in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]; *see Matter of Karen GG. [Marline HH.]*, 72 AD3d at 1157 n 2).

4. A redacted version of respondent's records from 2005 through 2007 was admitted into evidence at the trial.

Family Court determined that it was proper for him to refer to it, because some of this evidence was contained in the trial testimony given by other witnesses or in records that had been properly admitted into evidence at trial. However, the court did acknowledge that some of the references in Danser's report should not have been admitted and, for that reason, directed that a section of his report, entitled "Review of Records," be stricken because it referred to evidence that had not been admitted at trial. Significantly, Danser was never asked what impact this redacted evidence had on his evaluation of respondent and what effect, if any, it had on his opinion regarding respondent's mental condition.[5]

Similar issues exist with Liotta's report and testimony, both of which were admitted into evidence at trial. When he was first retained to perform his evaluation, Liotta was provided with petitioner's complete file on respondent. Later, he was asked to return the file and then, pursuant to a court order, was provided with a limited record to review. Liotta was also directed to limit his review to the records provided and not base his evaluation on respondent's fitness as a parent on statements made by the mother about respondent or on any collateral interviews that he may have conducted with other individuals regarding respondent. However, it is clear from the content of his report, as well as his testimony at trial, that Liotta, in forming his final opinion regarding respondent's fitness as a parent, relied on observations of respondent made by his eldest son's mental health provider as well as on statements made by the mother about respondent. In addition, Liotta's interviews with respondent's caseworker and his current mental heath therapist are referenced in his report and obviously played a role in the opinion that he ultimately offered regarding respondent's mental illness and its impact on his ability to be a parent. Like Danser, Liotta was never asked if this evidence was normally relied on within his profession as appropriate for the performance of such an evaluation and, while some of it was redacted, including any reference to his interview with the mental health therapist, Liotta was never asked what impact this evidence had in formulating his final opinion as to respondent's fitness as a parent. As a result, a proper foundation was not laid for the admission of the testimony of either psychologist or their reports (*see generally*

---

**5.** We also note that Danser's evaluation focused on respondent's ability to function and contained recommendations for treatment. It was not performed for the specific purpose of determining whether respondent had the ability to provide an acceptable level of care for his children and, for that reason alone, should not have been admitted into evidence (*see* Social Services Law § 384-b).

*Matter of Leon RR*, 48 NY2d 117, 122 [1979]; *see also Matter of Murphy v Woods*, 63 AD3d at 1526; *cf. People v Stone*, 35 NY2d 69, 76 [1974]; *Matter of Mohammad v Mohammad*, 23 AD3d 476, 476-477 [2005]). Without this evidence, Family Court's determination that respondent suffers from a mental illness that affected his ability to provide for his children was not supported by clear and convincing evidence and must be reversed.

Finally, we share Family Court's concern regarding petitioner's decision to seek termination of respondent's parental rights based on the existence of a mental illness while the suspended judgment was still in full force and effect. What is particularly troubling about the process that petitioner employed is that it has made no claim that respondent did anything during the period of suspension that would warrant vacating it or, for that matter, justify the commencement of this proceeding. To the contrary, it appears that respondent and the mother have made progress in planning for their children's future and facilitating their return to the family home. With that in mind, we remind the parties that, by reversing Family Court's order in this proceeding, the petition to extend the suspended judgment is no longer moot and is still pending.

Spain, J.P., Stein, Garry and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, termination petition dismissed, and matter remitted to the Family Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision.