■ In the Matter of KAITLYN X., a Child Alleged to be Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR X., Appellant, et al., Respondent. (Proceeding No. 1.) In the Matter of KAITLYN X., Alleged to be the Child of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ARTHUR X., Appellant. (Proceeding No. 2.) [997 NYS2d 777]—

Lynch, J. Appeals (1) from an order of the Supreme Court (Lawliss, J.), entered November 26, 2012 in Clinton County, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10-A, to extend the placement of the subject child with petitioner, (2) from an order of said court, entered May 21, 2013 in Clinton County, which granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10-A, to extend the placement of the subject child and from the order of protection entered thereon, and (3) from an order of said court, entered October 24, 2013 in Clinton County, which granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate the subject child to be the child of a mentally ill parent, and terminated the parental rights of respondent Arthur X.

Respondent Arthur X. (hereinafter the father) is the father of Kaitlyn X. (born in 1997). In December 2011, petitioner commenced a neglect proceeding pursuant to Family Ct Act article 10 against the father and respondent Michelle Y. (hereinafter the mother). Family Court (Lawliss, J.) ultimately determined that both parents had neglected the child and placed her in petitioner's care. At issue on this appeal are subsequent permanency orders issued pursuant to Family Ct Act article 10-A in November 2012 and May 2013, by which Supreme Court continued the child's placement with petitioner and further modified the permanency goal to free her for adoption. Each order included an order of protection against both parents in favor of the child. In the meantime, petitioner commenced a separate

proceeding seeking to terminate the father's parental rights on the basis of his mental illness (*see* Social Services Law § 384-b [4] [c]; [6] [a]). After a hearing, Supreme Court granted the petition and terminated the father's parental rights.[1] The father appeals from the two permanency orders, including the order of protection issued in May 2013, and the order terminating his parental rights.[2]

"To terminate parental rights upon the ground of mental illness, the petitioning agency must demonstrate, by clear and convincing evidence, that the parent is—and for the foreseeable future will continue to be—unable to provide proper and adequate care for his or her [child] by reason of that parent's mental illness. Such a showing, in turn, must include testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the [child]" (*Matter of Adrianahmarie SS. [Harold SS.]*, 99 AD3d 1072, 1072-1073 [2012] [internal quotation marks and citations omitted]; *see Matter of Burton C. [Marcy C.]*, 91 AD3d 1038, 1039 [2012]). The father maintains that petitioner failed to satisfy this burden of proof, contending that the expert medical witness's testimony lacked an adequate foundation and failed to establish parenting problems related to his asserted mental illness. We disagree.

Petitioner presented the report and testimony of Richard Liotta, a licensed psychologist, who performed a court-ordered evaluation of the father. As detailed in his report, Liotta considered extensive background and collateral source information in formulating his opinions, which he confirmed without contradiction was the type of information reasonably relied on in his profession. Under the professional reliability exception to the hearsay rule, an expert may "provide opinion evidence based on otherwise inadmissible hearsay, provided it is demonstrated to be the type of material commonly relied on in the profession" (*Hinlicky v Dreyfuss*, 6 NY3d 636, 648 [2006]; *see Matter of Greene v Robarge*, 104 AD3d 1073, 1074 [2013]; *compare Matter of Dakota F. [Angela F.]*, 110 AD3d 1151, 1153 [2013], *lv denied* 22 NY3d 1015 [2013]). While the father does not question the type of information that Liotta considered, he maintains that Liotta's testimony and report lacked a proper foundation

---

**1.** The mother executed a judicial surrender of her parental rights in June 2013.

**2.** As the father's paternal rights have been terminated, the issues attendant to the orders extending placement have been rendered moot and the appeals from said orders are dismissed (*see Matter of Kila DD.*, 34 AD3d 1168, 1169 [2006]; *Matter of Natasha F.*, 15 AD3d 788, 789 [2005]).

because he failed to address what impact the collateral evidence had on his opinion. The record shows otherwise.

Prior to the start of Liotta's testimony, the parties stipulated to the admission of his report into evidence, with the first 41 pages reciting background information, and the balance of the report, including the opinions and conclusions reached, admitted as truthful. Given this stipulation, and the fact that no foundation objection was raised during the hearing, we find that the father waived any objection to the foundation for the report, as well as Liotta's testimony. That being said, Liotta actually testified that the information derived from his interview with the father and the background information were of equal importance in formulating his opinion. He explained that how the father presented himself during the interview made sense given his behavioral history.

Liotta opined that the father was mentally ill and diagnosed him as suffering from multiple conditions, including a longstanding personality disorder, delusional disorder and other specified disruptive impulse control conduct disorder. Liotta's concern keyed into the father's lack of anger control, presenting a risk to the child's welfare. He explained that, complicating matters, the father's anger contributed to delusions and extreme behavior. The father has also shown poor judgment by continuing to reside with his current wife, despite the fact that she had fractured the child's wrist. Liotta determined overall that the father would be unable to care for the child without placing her at risk for abuse now and in the foreseeable future. He expressed doubt that medication would alleviate the father's personality disorder, a disorder which escalated his impulse control problems. Liotta noted that the father's motivation to pursue treatment was questionable and that there were few positive indicators that his condition was likely to improve. In the absence of competing expert evidence, and with due deference to Family Court's credibility assessments, we find that the court's determination is supported by clear and convincing evidence (see Matter of Burton C. [Marcy C.], 91 AD3d at 1040-1041).

Lahtinen, J.P., McCarthy, Rose and Clark, JJ., concur. Ordered that the appeals from the orders entered November 26, 2012 and May 21, 2013 are dismissed, without costs. Ordered that the order entered October 24, 2013 is affirmed, without costs.